HUGHES, J.
| tThis case presents a direct appeal, pursuant to LSA-Const. art. V, § 5(D), from a district court judgment ruling that the definition of “family,” for purposes of a local zoning ordinance restricting permissible occupancy of homes in a single-family residential zone, is unconstitutional and unenforceable; and a consolidated application for supervisory review, which challenges the district court’s denial of a motion for suspensive appeal of that judgment. Upon review we conclude the district court erred in its rulings; therefore, we reverse the declaration of unconstitutionality and the denial of a suspensive appeal, and remand for further proceedings.
| .FACTS AND PROCEDURAL HISTORY
The City of Baton Rouge/Parish of East Baton Rouge (“City-Parish”) filed suit in the district court on March 20, 2012 seeking injunctive relief against the defendant, Stephen C. Myers, to compel him to cease his alleged violation of the City-Parish’s Unified Development Code (the “UDC”), Title 7, Chapter 8, Section 8.201, Appendix H, entitled “Permissible Uses.” The City-Parish alleged that more than two unrelated persons were residing in a home owned by the defendant, located at 1977 Cherry-dale Avenue in Baton Rouge, in an area zoned “Al” and restricted to “single-family dwellings.”
The defendant answered the petition, admitting that he is the owner, but denying that he occupied the premises, as he had leased the property to other occupants. The defendant sought dismissal of the action for injunctive relief and asserted, both as an affirmative defense and as the basis for his reconventional demand for declaratory judgment, that the UDC zoning law’s restrictive definition of “family” was unconstitutional on its face and as applied, violating his state and federal constitutional rights of: freedom of association, by prohibiting individuals from residing together on his property unless they fall within certain classifications; freedom from intrusion by the government into his private life, by limiting the classes of people with whom he can conduct business and by imposing on him a duty to inquire into the familial status of prospective tenants contrary to the dictates of the federal Fair Housing Act (“FHA”), 42 U.S.C.A. § 3601 et seq.; freedom from deprivation of property without due process of law, denying him economically viable use of his property by limiting the number and categories of persons who may reside on his property and by failing to narrowly tailor the zoning ordinance to further a compelling government interest; and equal protection, contending the ordinance “imposes greater limitations on owners who choose to rent their homes ... than it does on owners who choose not to rent their | .homes” and also by prohibiting “foster children and non-adopted stepchildren without a living biological parent from being able [to] reside with their respective foster parents and stepparents ... while allowing an unlimited number of very dis *326 tant relatives via blood, marriage or adoption to reside together.” The defendant also urged, along with defenses and/or matters not relevant hereto, that the zoning law’s definition of “family” should be declared void for vagueness because its prohibitions are not clearly defined and it does not contain an unequivocal statement of law.
Following a bench trial, the district court rendered judgment for the defendant, dismissing the City-Parish’s demand for injunctive relief and, on the defendant’s request for declaratory judgment, ruled that “the definition of ‘famil/ contained in and applied to the [UDC] ... is hereby declared unconstitutional, and thus, unenforceable.” Upon request by this court, the district court issued a per curiam, containing the following reasons for judgment:
At the hearing on the merits, the testimony by the tenants shows that they are not conclusively related by blood, marriage, or adoption. In fact, the tenants’ testimony supports a finding that they are an interdependent Active fami-lia[l] unit living together and occupying a single housekeeping unit with single culinary facilities. More particularly, that they are more than two (2) persons living together by joint agreement and occupying a single housekeeping unit with single culinary facilities on a nonprofit, cost-sharing basis, none of which comports with the definition of “family” as outlined in the Unified Development Code Title 7, Chapter 2. After reviewing the statutes, briefs, evidence and argument of counsel, the Court finds that there is no rational basis for the definition of “family” found in the Unified Development Code that furthers a State objective. Being as common as they are today, treating creative kinship networks and families such as same sex relationships, non-marital child births, cohabitations, foster homes, and the like with disparate treatment from the traditional nuclear family appears out of touch with society’s reality and denies several non-traditional groups the right to cohabitate as a family unit. This restrictive definition of “family” is in direct conflict with the 14th Amendment of the [United States] Constitution by denying the aforementioned groups equal protection of the laws by limiting the number of nontraditional familial members residing in a single family dwelling located in an A-l, A-2, or Rural zoning district, while affording greater liberties to traditional family units by allowing an unlimited number of those familial members to reside in the same 14zoning district. No demonstrable State objective has been demonstrated by the evidence presented, thus, it is without question that it is the constitutional aim to deny the legislature the power to enact a statute that so narrowly defines “family” that it excludes several significant and ever growing familial segments of our society. Therefore, the defendant has proven that the Unified Development Code’s definition of “family” is unconstitutionally vague.
The City-Parish appealed the district court judgment, contending the district court erred: (1) in ruling that the definition of “family” contained in the City-Parish zoning law is unconstitutionally vague because it does not include as “family” “creative kinship networks and families such as same sex relationships, non-marital child births, cohabitations, foster homes, and the like”; (2) in ruling that the ordinance violates the defendant’s equal protection rights and the equal protection rights of “Active” family groups that are not parties to this litigation; (3) by refusing to apply the presumption of validity of legislation and by ruling that the definition was not rationally related to a legitimate *327 governmental purpose; and (4) by finding that the City-Parish failed to prove that the defendant was in violation of the ordinance when he leased the residence to four unrelated people. The City-Parish also filed a writ application, which was granted for review, asserting the district court erred in “arbitrarily” refusing to allow it to suspensively appeal the court’s judgment. See City of Baton Rouge/Parish of East Baton Rouge v. Myers, 2013-2036 (La.1/10/14).
LAW AND ANALYSIS

Constitutionality of City-Parish “Single Family" Zoning District

Questions of law, including issues of constitutionality, are reviewed de novo. See State in Interest of J.M., 2013-1717 (La.1/28/14), 144 So.3d 853, 859, 2014 WL 340999; City of Bossier City v. Vernon, 2012-0078 (La.10/16/12); 100 So.3d 301, 303; City of New Orleans v. Louisiana Assessors’ Retirement and Relief Fund, 2005-2548 (La.10/1/07), 986 So.2d 1,12. In determining the constitutionality of a municipal ordinance, it is important to keep certain principles before us. An ordinance, like a | ¡¡state statute, is presumed to be constitutional. In construing an ordinance, courts use the same guidelines as those used in construing a state statute. The presumption of a statute’s constitutionality is especially forceful in the case of statutes enacted to promote a public purpose. Unlike the federal constitution, our state constitution’s provisions are not grants of power, but instead are limitations on the otherwise plenary power of the people. Pursuant to Article VI of the Louisiana Constitution, a municipal authority governed by a home rule charter possesses powers in affairs of local concern within its jurisdiction that are as broad as those of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter. Because the City-Parish is governed by a home rule charter,[1] principles for the determination of the constitutionality of a legislative enactment are equally applicable to the ordinance at issue here. • See Fransen v. City of New Orleans, 2008-0076 (La.7/1/08), 988 So.2d 225, 233-34.
Zoning is a general plan designed to foster improvement by confining certain classes of buildings and uses of property to certain localities. The purpose of zoning is to reduce or eliminate the adverse effects that one type of land use might have on another. Jenkins v. St. Tammany Parish Police Jury, 98-2627 (La.7/2/99), 736 So.2d 1287,1290.
The authority to enact zoning regulations flows from the police power of governmental bodies and is valid if it bears a rational relation to the health, safety and welfare of the public. All ordinances are presumed valid; whoever attacks the constitutionality of an ordinance bears the burden of proving his allegation. Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982); Folsom Road Civic Association v. Parish of St. Tammany, 407 So.2d 1219, 1222 (La.1981); Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659, 672 (La.1975) (on rehearing). See also King v. Caddo Parish Commission, 97-1873 (La.10/20/98),6 719 So.2d 410, 418. When the propriety of a zoning decision is debatable, it will be upheld. Palermo Land Co., Inc. v. Planning Commission of Calcasieu Parish, 561 So.2d 482, 492-93 (La.1990). It is only when an action of a zoning commission is found on judicial review to be palpably unreasonable, arbitrary, an abuse of discretion, or an unreasonable exercise of police power that such *328 action will be disturbed. See Jenkins v. St. Tammany Parish Police Jury, 736 So.2d at 1291 (citing LSA-R.S. 33:4780.40; City of New Orleans v. La Nasa, 230 La. 289, 294, 88 So.2d 224, 226 (1956)). To be constitutional, a zoning ordinance must be sufficiently definite to notify citizens of their rights pursuant to the ordinance and must establish adequate standards to govern officials with respect to the uniform treatment of applications for permits under the ordinance. Morton v. Jefferson Parish Council, 419 So.2d 431, 434 (La. 1982); Smnmerell v. Phillips, 282 So.2d 450, 453 (La.1973).
A local government’s right to implement zoning districts within its jurisdiction is expressly set forth in Louisiana Constitution, Article VI, Section 17, which states:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.
The legislature further delineates a local government’s zoning authority in LSA-R.S. 33:4721 et seq. and LSA-R.S. 33:4780.40 et seq.[2] For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of any municipality or parish has the authority to regulate and restrict the height, number of stories, and size of structures, the percentage of a lot |7that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes; provided that zoning ordinances enacted by the governing authority of municipalities or parishes (or the acts of the zoning commission, board of adjustment, or zoning administrator) shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power granted, or the denial of the right of due process, although the right of judicial review of a zoning ordinance is not limited by the foregoing. See LSA-R.S. 33:4721; LSA-R.S. 33:4780.40.
For any and all of the purposes set forth in LSA-R.S. 33:4721 and LSA-R.S. 33:4780.40, the local governing authority of any municipality or parish may divide the municipality or parish into districts of such number, shape, and area as may be deemed best suited to carry out those purposes; within the districts so created, the governing authority may regulate and restrict the erection, construction, alteration, or use of buildings, structures, or land. See LSA-R.S. 33:4722(A); LSA-R.S. 33:4780.41. All such regulations are required to be uniform for each class or kind of land and structure throughout each district, but the regulations of one district may differ from those in other districts. See LSA-R.S. 33:4722(0(1); LSA-R.S. 33:4780.41.
Zoning regulations must be made in accordance with a comprehensive plan and designed to lessen congestion in the public streets, secure safety from fire, promote health and the general welfare, provide adequate light and air, avoid undue concentration of population, facilitate adequate transportation, water supply, sewer *329 age, schools, parks, and meet other public requirements. Such regulations must be made with reasonable consideration of the character of the district and its peculiar suitability for particular uses and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout the | ^municipality or parish. See LSA-R.S. 33:4723; LSA-R.S. seq. (governing the conduct of municipal and parish planning commissions and requiring that zoning be pursuant to a “master plan for the physical development” of the municipality or parish). The governing authority of a municipality or parish must provide for the manner in which the regulations and restrictions and the boundaries of the zoning districts shall be determined, established, enforced, and from time to time amended in accordance with the municipality’s or parish’s comprehensive zoning plan. See LSA-R.S. 33:4724(A); LSA-R.S. 33:4780.43. 33:4780.42. See also LSA-R.S. 33:103 et
In order to avail itself of the powers conferred by LSA-R.S. 33:4721 et seq. and LSA-R.S. 33:4780.40 et seq., the governing authority of the municipality or parish must appoint a zoning commission to recommend, after public hearing, the boundaries of the various original districts, the restrictions and regulations to be enforced therein, and any supplements, changes, or modifications thereof. See LSA-R.S. 33:4726(A); LSA-R.S. 33:4780.45.
The City-Parish’s zoning laws have been codified in the UDC,[3] which sets forth, in Section 8.1, the zoning districts for East Baton Rouge Parish and the designated use of each. Relevant to this case is zoning district “A,” which is designated for “Residential” use. Zoning district “A” is further divided by UDC Section 8.101(A) into, among others, sub-district “Al” for “Single Family Residential” use.
More specifically, UDC Section 8.201 and Appendix H provide in pertinent InPart:
Section 8.201 Al Single Family Residential District
The purpose of Al is to permit low density residential development with a maximum density of 4.1 units per acre. Accessory uses normally compatible with surrounding low density residential development may be permitted.
[[Image here]]
[Appendix H]
[[Image here]]
Permitted Uses
[[Image here]]
• Single family dwellings with a maximum density of 4.1 dwellings per acre
[[Image here]]
A “dwelling” is defined by the UDC as follows, in pertinent part:
Dwelling is a building used entirely for residential purposes and shall not be construed to include trailers.
A. A single-family dwelling is a building that contains only one living unit including attached buildings in the case of town houses.
*330 B. A multiple dwelling is a building that contains more than one (1) liv-ingunit.
A “family” is defined by the UDC as follows: [4]
Family is an individual or two (2) or more persons who are related by blood, marriage or legal adoption living together and occupying a single housekeeping unit with single culinary facilities; or not more than two (2) persons, or not more than four (4) persons (provided the owner lives on the premises) living together by joint agreement and occupying a single housekeeping unit with single culinary facilities on a non-profit, cost sharing basis.
The defendant in this case asserts numerous grounds for his contention that the UDC definition of “family” violates state and federal constitutionally protected rights.[5] After reviewing these claims, we conclude that the defendant’s asserted Lrwiolations of constitutionally protected rights can be grouped into two categories: claims personal to the defendant and claims personal to individuals other than the defendant. We address the latter claims first.
Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. State v. Smith, 2013-2318 (La.1/28/14), 144 So.3d 867, 872, 2014 WL 341007 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 5.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973)).[6] To have standing, a party must *331 complain of a constitutional defect in the application of the statute to himself, not of a defect in its application to third parties in hypothetical situations. In re Melancon, 2005-1702 (La.7/10/06), 935 So.2d In661, 667. “Standing” does not refer simply to a party’s legal capacity to appear in court; rather, standing is gauged by the specific statutory or constitutional claims that the party presents and his relationship to such claims. Standing may exist for a portion of a party’s claim but be lacking for another portion of the same claim if different rights are at issue. In re Melancon, 935 So.2d at 668 (citing International Primate Protection League v. Administrators of Tulane Educational Fund, 500 U.S. 72, 77, 111 S.Ct. 1700, 1704, 114 L.Ed.2d 134 (1991)). The standing inquiry requires careful judicial examination of whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. When the facts alleged in the petition provide a remedy to someone, but the plaintiff who seeks the relief for himself is not the person in whose favor the law extends the remedy, the petitioner lacks standing.[7] Id.
Although the defendant asserts that the City-Parish UDC prohibits individuals from residing together unless they fall within certain classifications and therefore violates freedom of association rights, the rights allegedly being violated are those of the tenants who are not allowed to live together in the restricted housing zone. In asserting that the City-Parish UDC prohibits foster children and non-adopted stepchildren without a living biological parent from residing with their respective foster parents and stepparents, while allowing an unlimited number of other individuals to reside with their distant relatives via blood, marriage, or adoption to reside together constitutes a denial of equal protection, the defendant is complaining of a violation of the rights of theoretical foster children and/or non-_Jadopted12 stepchildren, not the violation of any right of his own. Since these claims do not complain that any rights of the defendant have been violated, the defendant does not have standing to urge these claims under the particular facts of this case.
*332 Next, we consider the claims raised by the defendant, which are conceivably personal to him. The defendant contends: that the government is intruding into his private life by limiting the classes of people with whom he can conduct business and by imposing on him a duty to inquire into the familial status of prospective tenants contrary to the dictates of the FHA; that he is being deprived of property without due process of law because the number and type of persons who may reside on his property is being limited, denying him economically viable use of his property, and because the zoning ordinance in not narrowly tailored to further a compelling government interest; that he has been deprived of equal protection because the UDC imposes greater limitations on him, as an owner who has chosen to rent his house, than it does on other owners who have not chosen to rent their houses; and that he has been deprived of due process because the UDC’s definition of “family” is so vague that it is not an unequivocal statement of law.
We reject the defendant’s vagueness argument as meritless. In making this argument, the defendant claims that the prohibitions of the UDC’s “Al” zoning law are not clearly defined because the two clauses contained in the stated definition of “family” conflict. The first clause defines a “family” as “an individual or two (2) or more persons who are related by blood, marriage or legal adoption living together and occupying a single housekeeping unit with single culinary facilities”; the second clause defines a “family” as “not more than two (2) persons, or not more than four (4) persons (provided the owner lives on the premises) living together by joint agreement and occupying a single housekeeping unit with single culinary facilities on a nonprofit, cost sharing basis.” These two clauses are separated by a semi-colon and the word “or.” The word “or” is a clear, | ^unambiguous term and its use between two provisions results in alternative events. See Blackburn v. National Union Fire Insurance Co. of Pittsburgh, 2000-2668 (La.4/3/01), 784 So.2d 637, 642. Therefore, a potential resident of a single-family dwelling (i.e., a building that contains only one living unit), in an “Al”zoned district, must meet the requirements of either the first clause or the second clause. We find no ambiguity presented in the UDC definition of “family.”
Nor do we find merit in the defendant’s equal protection claim, asserting that homeowners who choose to rent their homes are treated differently than homeowners who do not. While the enumerated family types would seemingly allow a homeowner to have, in his “Al”-zoned home, an unlimited number of persons as co-residents who are “related” to him by blood, marriage, or legal adoption, the number of persons who may live in an “Al”-zoned home is limited to four persons when the homeowner’s co-residents are not all related to him. However, this circumstance does not render the ordinance unconstitutional.
The function of the equal protection clause is to measure the validity of classifications created by state laws. Rudolph v. Massachusetts Bay Insurance Co., 472 So.2d 901, 904 (La.1985). The equal protection clause does not require absolute equality or precisely equal advantages. It is possible for parties to be treated differently without violation of equal protection rights. Equal treatment of all claimants in all circumstances is not required. The law merely requires equal application in similar circumstances. Beauclaire v. Greenhouse, 2005-0765 *333 (La.2/22/06), 922 So.2d 501, 505.[8] In the instant case, the defendant has failed to demonstrate that he is treated differently than any other homeowner in the “Al” district.
|i4We likewise reject the defendant’s assertion that application of the UDC requires him to inquire into the familial status of prospective tenants in violation of the FHA, as no authority has been advanced that would prohibit such an inquiry. The FHA makes it illegal to “refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.” Cox v. City of Dallas, Texas, 430 F.3d 734, 740 (5th Cir.2005), cert. denied, 547 U.S. 1130, 126 S.Ct. 2039, 164 L.Ed.2d 783 (2006). See also 42 U.S.C.A. § 3604. “Familial status” is defined by 42 U.S.C.A. § 3602(k) as follows:
“Familial status” means one or more individuals (who have not attained the age of 18 years) being domiciled with—
(1) a parent or another person having legal custody of such individual or individuals; or
(2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.
The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.
Section 3607(b)(1) of the FHA expressly states: “Nothing in this subchapter limits the applicability of any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling.”
“Familial status” refers to the presence of minor children in the household. To establish a prima facie case of disparate impact under the FHA, “a plaintiff must show at least that the defendant’s actions had a discriminatory effect.” “Discriminatory effect” describes conduct that actually or predictably results in discrimination. To make out a prima facie case of discrimination under the disparate impact theory the plaintiff must show: (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant’s facially neutral 11fiacts or practices. Pfaff v. U.S. Department of Housing and Urban Development, 88 F.3d 739, 744-45 (9th Cir.1996). While Section 3604(a) is designed to ensure that no one is denied the right to live where they choose for discriminatory reasons; it does not reach every event “that might conceivably affect the availability of housing.” Jersey Heights Neighborhood Association v. Glendening, 174 F.3d 180, 192 (4th Cir.1999).
The FHA does not expressly prohibit a landlord from inquiring as to the familial status of prospective tenants, and the defendant has stated no authority for the proposition. In fact, the decision rendered in Pfaff v. U.S. Department of Housing and Urban Development weighs against such a conclusion. In Pfaff, the landlord/plaintiffs sought review of a deci *334 sion by the Department. of Housing and Urban Development, which found the landlord/plaintiffs guilty of “familial status” discrimination under the FHA because they maintained a policy of renting their 1,200 square foot, two bedroom, two bath house to families with no more than four members, in order to minimize wear and tear to the small home. In granting relief to the landlord/plaintiffs, the Ninth Circuit expressed the view that “the Pfaffs’ facially neutral, numerical occupancy restriction was hardly an unreasonable means under existing law to prevent the dilapidation of their little house.” See Pfaff v. U.S. Department of Housing and Urban Development, 88 F.3d at 749. Obviously, the reasonable imposition of a numerical occupancy restriction would be difficult, if not impossible, to accomplish without some inquiry in to the familial status of prospective tenants (i.e., Pfaff not only allows a landlord to ask how many children a prospective tenant will have living in the rental property, but also to limit the number of occupants that may live in his rental property).[9]
hñThe remainder of the defendant’s constitutional claims essentially present the allegation that he has been unconstitutionally deprived of some part of his economic interest in his property because his potential profit as a lessor has been impaired by the UDC’s “Al” zoning restrictions.[10] Our review of the evidence *335 presented at the trial of this matter did not reveal that the defendant presented any evidence demonstrating that enforcement of the UDC’s “Al” zoning restriction would result in his inability to obtain “Al”compliant tenants as lessees for his property. Therefore, the defendant failed to bear his burden of proof on these claims.
Furthermore, we note that the U.S. Supreme Court has rejected a similar constitutional attack on a similar zoning law. In Village of Belle Terre v. Boraas, 117the Supreme Court considered the constitutionality of a zoning ordinance, which restricted land use to “one-family dwellings” and defined the word “family” to mean one or more persons related by blood, adoption, or marriage, or not more than two unrelated persons, living and cooking together as a single housekeeping unit. The Supreme Court further distinguished the ordinance’s definition of “family” from residents of boarding houses, fraternity houses, and the like, which the court noted presented such urban problems as increased traffic, insufficient available parking, and increased noise. See Village of Belle Terre v. Boraas, 416 U.S. at 9, 94 S.Ct. at 1541 (citing Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926)[11]).
In Village of Belle Terre v. Boraas, a homeowner in the one-family zoning district had leased his home to six college students, who were not related by blood, adoption, or marriage, and the village subsequently served the owner with an order to remedy violations of the zoning ordinance. In response, the owner and three of the lessees filed suit seeking injunctive relief and a judgment declaring the ordinance unconstitutional. In rejecting the landlord/tenants’ contentions, the Supreme Court determined that the zoning law was reasonable, not arbitrary, and that it bore a rational relationship to a permissible state objective, reasoning that the zoning law involved no procedural disparity inflicted on some but not on others and involved no fundamental right guaranteed by the Constitution, such as voting, |1Rthe right of association, the right of access to the courts, or any right of privacy. The Court further rejected the posited argument that if two unmarried people can constitute a “family,” there is no reason why three or four may not, concluding that every line drawn by a legislature leaves some out that might well have been included, but exercise of discretion is a legislative, not a judicial, function.[12] See Village *336 of Belle Terre v. Boraas, 416 U.S. at 7-8, 94 S.Ct. at 1540.[13]
After careful consideration, we conclude that the defendant did not prove a violation of his constitution rights in the application of the UDC in this case.

City-Parish Enforcement Action

The City-Parish’s remaining assignment of error asserts the district court erred in finding that it failed to prove that the defendant was in violation of the ordinance when he leased his “Al”-zoned house to four unrelated people.
| mBecause the district court ruled that the definition of “family” used in the UDC unconstitutionally restricted who may occupy an “Al”-zoned home, the court did not reach the merits of the City-Parish’s injunctive action against the defendant, pursuant to UDC Section 6.7, which contains the enforcement provisions for the City-Parish zoning law. Therefore, we remand this matter to the district court for consideration of the merits of the City-Parish’s petition for injunctive relief.

Denial of Suspensive Appeal

In connection with its writ application, the City-Parish asserts that the district court erred in arbitrarily denying a suspensive appeal of the declaratory judgment holding the City-Parish ordinance unconstitutional.
The judgment signed by the district court in this case, on May 6, 2013, contained two rulings: (1) the denial of the City-Parish’s demand for injunctive relief against the defendant to compel him to cease his alleged violation of the UDC’s “Al” single-family zoning restriction; and (2) the grant of the defendant’s request for a declaratory judgment ruling that the UDC definition of “family” is unconstitutional and unenforceable. The City-Parish filed a motion for a suspensive appeal on May 14, 2013; however, the district court denied the suspensive appeal and granted a devolutive appeal instead.
We recognize that by the time this decision is issued, the question of whether the appeal should have been sus-pensive or devolutive will have become *337 moot. Further, a court is not required to decide moot questions or abstract propositions, or to declare, for the governance of future cases, principles or rules of law that cannot affect the result as to the thing in issue, in the case before it. Council of City of New Orleans v. Sewerage and Water Board, of New Orleans, 2006-1989 (La.4/11/07), 953 So.2d 798, 802. However, exceptions to the mootness doctrine have been recognized. In particular, and as applicable to the |2ninstant case, a court should consider whether there is any reasonable expectation that the complained-of conduct will recur. See Cat’s Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1194-96. A finding of mootness is precluded when: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. In re Grand Jury, 98-2277 (La.4/13/99), 737 So.2d 1, 11. Therefore, we will consider the suspensive appeal issue presented herein, since it is likely to recur in zoning enforcement actions hereafter brought by the City-Parish.
Generally, a motion for suspensive appeal is governed by LSA-C.C.P. art. 2123, which provides in pertinent part, “Except as otherwise provided by law, an appeal that suspends the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within thirty days of any of the following ... [t]he expiration of the delay for applying for a new trial or judgment notwithstanding the verdict ... if no application has been filed timely.” (Emphasis added.) An exception to LSA-C.C.P. art. 2123 can be found in LSA-C.C.P. art. 3612, which states:
A. There shall be no appeal from an order relating to a temporary restraining order.
B. An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction, but such an order or judgment shall not be suspended during the pendency of an appeal unless the court in its discretion so orders.
C. An appeal from an order or judgment relating to a preliminary injunction must be taken, and any bond required must be furnished, within fifteen days from the date of the order or judgment. The court in its discretion may stay further proceedings until the appeal has been decided.
D. Except as provided in this Article, the procedure for an appeal from an order or judgment relating to a preliminary or final injunction shall be as provided in Book III.
(Emphasis added.)
hi The City-Parish asserts in brief to this court that it was not attempting to suspensively appeal the portion of the district court judgment that denied injunctive relief against the defendant, as suspending the judgment’s denial of injunctive relief would be “meaningless” in this case. The City-Parish further argues that a suspen-sive appeal of that part of the district court judgment declaring a portion of the zoning law unconstitutional would “not cause the injunction to issue,” so a suspensive appeal would cause no damage to the defendant. On the other hand, the City-Parish contends a devolutive appeal would “likely cause damage to those residents of single family zones who do not wish to see unlimited occupancy permitted next door.”
Because LSA-C.C.P. art. 3612 governs only appeals from orders or judgments relating to injunctions, Article 3612 does not apply in this case to the declaratory *338 judgment on the constitutionality of the city ordinance; therefore, LSA-C.C.P. art. 2123 should have been applied to grant a suspensive appeal to the City-Parish in this case. See also LSA-R.S. 13:4431.
DECREE
Accordingly, we reverse the declaration of unconstitutionality and the denial of a suspensive appeal, and remand this matter to the district court for further proceedings consistent with the foregoing.
REVERSED; REMANDED WITH INSTRUCTIONS.
KNOLL, Justice, dissents and assigns reasons.
WEIMER, Justice, concurs in the result and assigns reasons.

. See City of Baton Rouge v. Williams, 95-0308 (La. 10/16/95), 661 So.2d445, 447.

. We note that the parishes of Rapides, Jefferson, Sabine, and Webster are expressly excluded from the application of LSA-R.S. 4780.40.

. The stated purpose of the UDC, found in Section 1.1, is as follows:
In accordance with the provisions of R.S. 33:101 etseq., and particularly R.S. 33:112, and in order to promote the health, safety, convenience, morals, and general welfare of the community, to provide for the proper arrangement, width, naming of streets in relation to other existing or planned streets and to the Master Plan, and to provide for the adequate and convenient open spaces for traffic, vehicular parking, utilities, access of fire-fighting apparatus, recreation, light, and air for the avoidance of congestion of population the following regulations are adopted by the Planning Commission.

. See also LSA-C.C. art. 3506, providing in pertinent part: "Whenever the terms of law, employed in this Code, have not been particularly defined therein, they shall be understood as follows: ... Familyf,] in a limited sense, signifies father, mother, and children. In a more extensive sense, it comprehends all the individuals who live under the authority of another, and includes the servants of the family. It is also employed to signify all the relations who descend from a common root.”

. While the City-Parish raises in its assignments of error to this court only that the two bases cited by the district court for the ruling of unconstitutionality were erroneous (that the UDC does not include as "family” "creative kinship networks” and that the ordinance violates the equal protection rights of the defendant and "fictive” families), the defendant contends that review by this court is not limited to consideration of only these two grounds. The defendant asserts that this court is permitted to consider any argument he has raised regarding the unconstitutionality of the zoning definition, under the long-standing jurisprudential rule that an appellate court may consider any argument in support of the trial court’s judgment in his favor when determining whether to affirm the trial court’s ruling. We agree. A party who is satisfied with a judgment and who does not file a notice of appeal, or a petition for review, is still a party to the appeal or review whose arguments must be heard, and, in support of the judgment in his favor, he may present any argument supported by the record, whether it was ignored or rejected by the court below. In other words, if a party seeks to raise issues that call for a change in the judgment below, he must file an appeal or petition, but if he merely makes alternative arguments in support of the judgment, he need not. Roger v. Estate of Moulton, 513 So.2d 1126, 1136 (La. 1987) (on rehearing). See also Mosing v. Domas, 2002-0012 (La. 10/15/02), 830 So.2d 967, 976; Matthews v. Consolidated Companies, Inc., 95-1925 (La.12/8/95), 664 So.2d 1191, 1191-92 (per curiam). Therefore, we will consider the viability of the alternative arguments the defendant presented to the district court in this case, which he also cites in brief to this court in support of the district court's ruling of unconstitutionality.

. State v. Smith further noted that a limited exception to this principle of constitutional adjudication has been carved out in the area of First Amendment concerns. Even though a statute may be constitutionally applied to the activities of a particular defendant, that *331 defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the court. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. However, the doctrine of overbreadth is a creature unique to the First Amendment, in particular free speech. Thus, overbreadth invalidation of a statute is generally inappropriate when the allegedly impermissible application of the challenged statute affects conduct rather than speech, and especially where the conduct at issue is harmful and controlled by criminal law. State v. Smith, 144 So.3d at 872-73 (citing State v. Schirmer, 93-2631 (La. 11/30/94), 646 So.2d 890, 900-01; State v. Neal, 500 So.2d 374, 377 (La. 1987)).

. See also St. Charles Gaming Company, Inc. v. Riverboat Gaming Commission, 94-2697 (La. 1/17/95), 648 So.2d 1310, 1315 (per cu-riam), which restated the principle that courts will not decide abstract, hypothetical or moot controversies or render advisory opinions with respect to such controversies, as courts require that cases submitted for adjudication be justiciable, ripe for decision, and not brought prematurely, in order to avoid deciding abstract, hypothetical or moot questions; and further defining a “justiciable controversy” as one presenting an existing actual and substantial dispute involving the legal relations of the parties who have real adverse interests and upon which the judgment of the court may effectively operate through a decree of conclusive character, not one that is hypothetical or abstract, academic or moot.

. States (including local governments) are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. See City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976).

. We also note that the defendant testified at the trial of this matter that he does not question his prospective tenants about their familial status:
I don’t know whether they’re related or not. I don’t ask whether they’re related or not. I believe it violates the Fair — Federal Fair Housing Act to ask whether a prospective tenant has — what their family relationship is. I don't ask their sex. I don't ask their race. I don’t ask their gender. I don’t ask their sexual orientation. I don't ask any other of the protected classes that are out there. I don’t ask whether they have children. So I don’t know whether they are related or not, and that's why I put Paragraph 5.1 in my leases that discloses A-l zoning and have them initial that paragraph so they then make their decision as to — and my presumption is, is that they would have represented that they were related they if they agreed to that, or they would be the ones that you should be suing because they're the ones that are occupying the house[,] not me.
The lease agreement in effect between, the defendant and his tenants at all pertinent times stated that the lessee acknowledged that "the neighborhood is governed by the A-l Single Family Zoning guidelines and applicable variances approved by East Baton Rouge Parish.” The lessees further agreed in the lease "to hold Lessor harmless should any action be raised pursuant to zoning regulations” and that their "sole remedy and liquidated damages” would be modification of the lease agreement, but only from the date of a "final court order.”

. Although the defendant also argues that the City-Parish zoning law is not narrowly tailored to further a compelling state interest, because the defendant’s interest here is a property interest and the UDC does not interfere with his fundamental personal rights or draw upon inherently suspect distinctions such as race or religion, the jurisprudence requires only that the classification challenged be rationally related to a legitimate state interest. See Lakeside Imports, Inc. v. State, 94-0191 (La.7/5/94), 639 So.2d 253, 256 (citing City of New Orleans v. Dukes, 427 U.S. at 301-05, 96 S.Ct. at 2516-17; Harry’s Hardware v. Parsons, 410 So.2d 735, 737 (La.1982), cert. denied, 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 145 (1982)). Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power. LSA-Const. art. I, § 4(A). Courts may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. In the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Constitution. See Lakeside Imports, Inc. v. State, 639 So.2d at 257 *335 (citing City of New Orleans v. Dukes, 427 U.S. at 303-04, 96 S.Ct. at 2517).

. In Village of Euclid, Ohio v. Ambler Realty Co., the Supreme Court held that the wisdom, necessity, and validity of zoning regulations, restricting the use and occupation of private lands in urban communities, are so apparent that they are now uniformly sustained under the complex conditions of our day, for reasons analogous to those which justify traffic regulations. Zoning regulations find their justification in some aspect of the police power, asserted for the public welfare. The line that separates the legitimate from the illegitimate assumption of such power is not capable of precise delimitation, as it varies with circumstances and conditions of the locality. If the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control. See Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. at 386-88, 47 S.Ct. at 118. Thus, before a zoning ordinance can be declared unconstitutional, its provisions must be clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Id., 272 U.S. at 395, 47 S.Ct. at 121.

. Quoting former Justice Holmes, the Court further noted:
When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a *336 line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.
See Village of Belle Tern v. Boraas, 416 U.S. at 7-8 n. 5, 94 S.Ct. at 1540 n. 5 (citations omitted).

. We reject the defendant's contention that the subsequent case of Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), undermined the rationale of Village of Belle Terre v. Boraas. The Moore Court specifically distinguished the zoning ordinance under consideration therein from that at issue in Village of Belle Terre v. Boraas, stating:
[0]ne overriding factor sets this case apart from Belle Terre. The ordinance there affected only unrelated individuals. It expressly allowed all who were related by "blood, adoption, or marriage” to live together, and in sustaining the ordinance we were careful to note that it promoted "family needs” and "family values.” East Cleveland, in contrast, has chosen to regulate the occupancy of its housing by slicing deeply into the family itself. This is no mere incidental result of the ordinance. On its face it selects certain categories of relatives who may live together and declares that others may not. In particular, it makes a crime of a grandmother’s choice to live with her grandson in circumstances like those presented here.
431 U.S. at 498-99, 97 S.Ct. at 1935 (citation omitted).