FILED

02/25/2026

Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 29, 2025 Session

## TINSLEY PROPERTIES, LLC ET AL. v. GRUNDY COUNTY, TENNESSEE

**Appeal by Permission from the Court of Appeals
Chancery Court for Grundy County
No. 6846     Melissa Thomas Willis, Chancellor**

———————————————————————

**No. M2022-01562-SC-R11-CV**

———————————————————————

This appeal focuses on whether a Grundy County Resolution that regulates the location of quarries is, in effect, a zoning ordinance enacted in violation of Tennessee's County Zoning Act ("the CZA"). The Plaintiffs claim the Resolution is invalid because Grundy County did not comply with the procedural requirements for passing a zoning ordinance as mandated by the CZA. The Plaintiffs further contend that the County could not utilize its police powers to regulate the location of quarries because the Resolution was preempted by state law. Grundy County argues that the Resolution was not a zoning ordinance, but rather a valid exercise of the County's police powers. The trial court entered judgment in favor of Grundy County, and the Court of Appeals affirmed. Tinsley Props., LLC v. Grundy Cnty., No. M2022-01562-COA-R3-CV, 2024 WL 495700 (Tenn. Ct. App. Feb. 8, 2024), perm. app. granted, (Tenn. June 27, 2024). We granted permission to appeal. Based on our review of applicable law, we conclude that Grundy County enacted what amounts to a zoning ordinance without complying with the statutory requirements contained in the CZA. Therefore, we hold that the trial court erred by granting summary judgment in favor of Grundy County. Accordingly, we reverse the judgment of the Court of Appeals, vacate the trial court's judgment, and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed; Case Remanded to the Trial Court**

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which HOLLY KIRBY, SARAH K. CAMPBELL, DWIGHT E. TARWATER, and MARY L. WAGNER, JJ., joined.

Michael A. Cottone and Quynh-Anh D. Kibler, Nashville, Tennessee, for the appellants, Tinsley Properties, LLC and Tinsley Sand & Gravel, LLC.

William C. Rieder, Tullahoma, Tennessee, and J.W. Luna, Katherine B. Barnes, and Hart Knight, Nashville, Tennessee, for the appellee, Grundy County, Tennessee.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; Gabriel Krimm, Senior Assistant Solicitor General; Bennett Heidelberger, Assistant Solicitor General; and Joshua D. Minchin, Office of the Solicitor General Honors Fellow, for the Amicus Curiae, State of Tennessee.

Casey R. Malloy and Tiffany B. Oliver, Nashville, Tennessee, for the Amicus Curiae, Tennessee Chamber of Commerce and Industry.

William J. Harbison II, Nashville, Tennessee, for the Amicus Curiae, Tennessee Mining Association.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 2019, the Grundy County Board of County Commissioners enacted Resolution 19-5-20c ("the Resolution") to regulate the operation and location of rock crushers, quarries, and gravel pits in unincorporated areas of Grundy County, Tennessee. The Resolution states in relevant part:

> No quarry, rock crusher or gravel pit may be located within five thousand (5,000) feet of a residence, school, licensed daycare facility, park, recreation center, church, retail, commercial, professional or industrial establishment. Measurements shall be taken from the nearest recorded property line of the quarry business to the nearest property line or boundary of the foregoing.

Grundy Cnty., Tenn., Res. No. 19-5-20c (May 20, 2019).[1]

In late 2020, Tinsley Properties, LLC ("Tinsley Properties") purchased property on Clouse Hill Road, which is located in an unincorporated part of Grundy County. Tinsley Properties began leasing the property several months later to Tinsley Sand & Gravel, LLC ("Tinsley Sand") to operate a quarry. After learning about the new quarry, the mayor of Grundy County investigated and learned that neither Tinsley Properties nor Tinsley Sand (collectively "Tinsley") had applied for a permit to operate a quarry in Grundy County as

---

[1] The Board adopted Resolution 24-1-22A in 2022 to amend the 2019 Resolution. Grundy Cnty., Tenn., Res. No. 24-1-22A (Jan. 24, 2022). The amendment primarily served to add a grandfathering provision and did not change the 2019 Resolution's distance or location requirements. For clarity, we refer to Resolution 19-5-20c, even as amended by Resolution 24-1-22A, as "the Resolution."

required by the Resolution. Furthermore, the mayor determined that Tinsley's quarry property did not comply with the Resolution's requirement that quarries be located more than 5,000 feet away from any "residence, school, licensed daycare facility, park, recreation center, church, retail, commercial, professional or industrial establishment." Grundy Cnty., Tenn., Res. No. 19-5-20c (May 20, 2019). The mayor sent Tinsley a letter explaining that the quarry's operations violated the Resolution and requesting the termination of all quarrying activities.

In February 2022, Tinsley filed a declaratory judgment action in the Grundy County Chancery Court seeking a determination that the Resolution was void. Tinsley first argued that the Resolution was void because it was a zoning regulation which did not comply with the statutory zoning requirements contained in the CZA. See Tenn. Code Ann. §§ 13-7-101 to -119 (2019).[2] Specifically, Tinsley pointed out that the County did not hold public hearings or publish notices in advance of such hearings as required by Tennessee Code Annotated section 13-7-104, nor did the County establish a regional planning commission or certify a zoning plan as set out in section 13-7-101 and section 13-7-102.

In the alternative, Tinsley argued that Grundy County could not rely on its police powers under Tennessee Code Annotated section 5-1-118(c) to adopt the Resolution because other state laws preempted the measure. Tinsley asserted that section 5-1-118(c)(2) expressly restricts the County's powers to regulate the quarry because those police powers "shall not apply to those activities, businesses, or uses of property and business occupations and practices that are subject to regulation pursuant to [the Tennessee Air Quality Act or Tennessee's Water Quality Control Act of 1977]." Tenn. Code Ann. § 5-1-118(c)(2) (2015).

Grundy County filed a counterclaim seeking a declaration that the Resolution is valid and seeking to enjoin Tinsley from operating the quarry. The County admitted that the Board of Commissioners did not comply with the requirements in the CZA when adopting the Resolution. However, the County argued that the Resolution was not a zoning regulation subject to the CZA. Thus, it maintained that it could adopt the Resolution pursuant to its police powers under Tennessee Code Annotated section 5-1-118(c).

While litigation was pending, Tinsley applied to Grundy County for a quarry permit. Tinsley Props., 2024 WL 495700, at *1 n.2. The County denied the application because the quarry violated the distance requirements contained in the Resolution. Id. The Resolution provides for administrative review of permit denials, but the parties stipulated that Tinsley was not required to exhaust any available administrative remedies. Id.

The parties each filed a motion for summary judgment. The trial court granted Grundy County's motion and denied Tinsley's motion, holding that the Resolution was a

---

[2] We cite to the version of the CZA that was in effect at the time of the relevant underlying events.

lawful exercise of Grundy County's police powers. The trial court found that the Resolution could not have been "tantamount to zoning" because the County did not have a comprehensive zoning plan, so it concluded that the Resolution was not subject to the statutory requirements for zoning ordinances.[3]

The Court of Appeals affirmed the trial court's judgment on different grounds. Id. at *2. Unlike the trial court, the Court of Appeals held that the lack of a comprehensive zoning plan is not dispositive in determining whether an ordinance is tantamount to zoning. Id. at *2–3 (opining that "Tennessee does not require a local government to 'adopt a general plan before it can exercise its zoning power'" (quoting Foehring v. Town of Monteagle, No. M2022-00917-COA-R3-CV, 2023 WL 3335296, at *7 (Tenn. Ct. App. May 10, 2023))). Nonetheless, the Court of Appeals held that the Resolution was not a zoning regulation subject to statutory zoning procedures because it did not "divide the County into districts, nor does it have the effect of doing so." Id. at *4. The Court of Appeals further held that Grundy County validly enacted the Resolution pursuant to its police powers in Tennessee Code Annotated section 5-1-118. Id. at *5. Although Tinsley maintained that section 5-1-118(c)(2) prohibited Grundy County from regulating quarrying since that activity was already regulated, the Court of Appeals found that the exception was inapplicable because the Tennessee Air Quality Act and Water Quality Control Act regulate other aspects of quarrying and "do not address blasting, drilling, and heavy industrial traffic." Id. (citation modified). We granted permission to appeal.

## II. STANDARD OF REVIEW

This appeal arises from the trial court's ruling on cross-motions for summary judgment by Tinsley and Grundy County. A trial court should grant summary judgment only when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. Proc. 56.04. Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. Falls v. Goins, 673 S.W.3d 173, 178 (Tenn. 2023). This case also presents questions of statutory interpretation, which we likewise review de novo. Id. at 179 (first citing Steward v. State, 33 S.W.3d 785, 791 (Tenn. 2000); and then citing Johnson v. Hopkins, 432 S.W.3d 840, 844 (Tenn. 2013)).

## III. ANALYSIS

Before this Court, Tinsley maintains that the Resolution is void and invalid because Grundy County passed it without complying with the CZA's procedural requirements for enacting a zoning regulation. For its part, Grundy County contends that the statutory zoning

---

[3] In SNPCO, Inc. v. City of Jefferson City, this Court explained that in determining whether an ordinance is, in fact, a zoning ordinance, one consideration is whether the challenged ordinance is so closely related to the City's zoning plan that it is "tantamount to zoning." 363 S.W.3d 467, 478 (Tenn. 2012).

requirements were inapplicable because the Resolution was a police power regulation designed to regulate nuisance and land use, which may be passed without enacting county-wide zoning.

## A. County Zoning Authority

Counties in Tennessee have no inherent powers to control land use. S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ., 58 S.W.3d 706, 711–12 (Tenn. 2001). They are limited to powers "the General Assembly has deemed appropriate to confer." Id. The General Assembly has vested counties with the power to enact and amend zoning regulations governing the use of land through the CZA. See Tenn. Code Ann. §§ 13-7-101 to -119. The CZA provides that a county may regulate:

> the location, height and size of buildings and other structures, the percentage of lot which may be occupied, the sizes of yards, courts, and other open spaces, the density and distribution of population, the uses of buildings and structures for trade, industry, residence, recreation or other purposes, and the uses of land for trade, industry, residence, recreation, agriculture, forestry, soil conservation, water supply conservation or other purposes[.]

Id. § 13-7-101(a)(1).

Under the CZA, the planning commission may divide the county into "districts of such number, shape or area as it may determine" and regulate the uses of land and the construction and uses of structures in those districts. Id. § 13-7-102. Within each zone, "[a]ll such regulations shall be uniform for each class or kind of buildings . . . , but the regulations in one (1) district may differ from those in other districts." Id. This ordinance must be submitted to the county's regional planning commission. Id. If the planning commission approves the ordinance, then the ordinance may be enacted. Id. If the ordinance is not approved, then the county legislative body must pass the ordinance by a two-thirds majority. Id. Other procedural requirements include holding a public hearing, providing notice by publication, and creating a county board of zoning appeals. See id. §§ 13-7-102, -104, -106.

The County argues that the CZA is not the only avenue by which counties may regulate the location of quarries: they may also do so under their police powers. It is true that local governments in Tennessee have "the authority to enact regulations concerning the health, safety, and welfare of the community pursuant to its police powers without providing notice or hearings." Cherokee Country Club, Inc. v. City of Knoxville, 152 S.W.3d 466, 471 (Tenn. 2004) (citing 1 Edward H. Ziegler, Jr., et al., Rathkopf's The Law of Zoning and Planning § 1.02 (4th ed. 2003)); see also Tenn. Code Ann. § 5-1-118(c) (giving counties the power to exercise police powers as set forth in Tennessee Code Annotated section 6-2-201(22) if the resolution is adopted by a two-third's vote). But a

local government may not circumvent the legislative guardrails put in place to protect citizens' use of their property by "labeling a zoning act a mere exercise of police power." Cherokee Country Club, 152 S.W.3d at 472 (quoting Ellison v. Fort Lauderdale, 183 So.2d 193, 195 (Fla. 1966)). Consequently, we first must determine whether the Resolution was, in effect, a zoning ordinance, thereby invoking the procedural protections contained in the CZA.

This Court first distinguished a zoning regulation from a building regulation enacted pursuant to a city's police powers in Cherokee Country Club v. City of Knoxville. Id. at 471. In Cherokee Country Club, a Knoxville, Tennessee country club purchased land that included an unoccupied house ("the Smith House"), with the intention of demolishing the house to expand the country club's facilities. Id. at 469. At the time of purchase, the house was not included in a historical district. Id. A few months later, however, the City of Knoxville passed an emergency demolition ordinance temporarily suspending the issuance of demolition permits for properties being considered for designation as a historical zoning district. Id. The mayor of Knoxville subsequently applied to re-zone the Smith House as a historic district, effectively blocking its demolition. Id. Unaware of the emergency ordinance and the mayor's application to re-zone the house, the Cherokee Country Club applied for a permit to demolish the Smith House, which was denied. Id. The country club filed suit against the City of Knoxville, arguing that the emergency demolition ordinance was not adopted pursuant to statutory zoning requirements. Id. The city responded by asserting that the emergency demolition ordinance was a building regulation which did not require adherence to the zoning procedures. Id. at 470.

This Court opined that it is difficult to determine when the procedural requirements of zoning must be imposed on the actions of local governments and that making this determination requires a case-by-case approach. Id. at 472. Nonetheless, we rejected the City of Knoxville's argument that it did not have to follow statutory zoning requirements simply because it claimed its actions were grounded in a different source of authority. Id. at 471–72. After reviewing zoning treatises and caselaw from other jurisdictions, this Court adopted the "substantial effects" test,[4] under which an ordinance is considered tantamount to zoning—and therefore subject to the procedural requirements of the CZA—when it substantially affects the use of land. Id. at 472–73. We explained that the analysis should focus on the "terms and the effect" of the ordinance and its correlation to a general zoning plan. Id. at 473 (quoting 8 McQuillin, The Law of Municipal Corporations § 25.53 (3d ed. 2004)). Specifically, we stated:

> In resolving this issue of first impression, we believe that the determination of whether a regulation or an ordinance "substantially affects"

---

[4] The Court in SNPCO referred to the "substantial effect" test and the "substantial effects" test interchangeably. See SNPCO, 363 S.W.3d at 478. For consistency, we will refer to it as the "substantial effects" test.

the property owners' use of land is a well-reasoned and persuasive approach. This analysis avoids the difficulty of definitions found in some decisions by focusing on both the terms and the effect of an ordinance, as well as its "relation to the general plan of zoning." McQuillin § 25.53. The analysis is also more comprehensive and more precise than simply attempting to distinguish whether the terms of an ordinance regulate the use of land or how the land is used. Finally, the analysis eliminates the risk that a municipality may avoid statutory zoning requirements by attempting to label what is in reality a zoning ordinance as a building regulation.

Id. (footnote omitted).

Applying the substantial effects test, we determined that the demolition ordinance's comprehensive, permanent restrictions on demolition substantially affected the club's use of its property "without undertaking the appropriate planning, providing notice to the affected landowners, or conducting public hearings." Id. at 474. Accordingly, the Court held that the ordinance was invalid due to the city's failure to follow the statutory zoning procedures.

A few years later, this Court refined the substantial effects test in SNPCO, Inc. v. City of Jefferson City. 363 S.W.3d 467, 478 (Tenn. 2012). The Court in SNPCO considered whether an ordinance, which banned the sale of fireworks in city limits, was a zoning ordinance entitled to the procedural protections of Tennessee Code Annotated section 13-7-208 or an ordinance enacted pursuant to the city's police powers. Id. at 470–71. We noted that the attempts by the Court of Appeals to apply the substantial effects test had produced inconsistent results, possibly due to the Court of Appeals' focus on whether the ordinance substantially affected the use of property "without analyzing the extent to which the challenged ordinance was so closely related to the city's zoning plan that it should be considered as tantamount to a zoning ordinance." Id. at 478.

We clarified that the substantial effects test was actually a two-step inquiry. Id. First, a reviewing court must "review the terms of the challenged ordinance and the municipality's comprehensive zoning plan to determine whether the ordinance is so closely related to the zoning plan that it can be fairly characterized as tantamount to zoning." Id. If there is no comprehensive zoning plan, courts should analyze the extent to which the ordinance's terms are "customarily associated with comprehensive zoning plans." See id. Second, the court must decide whether "the challenged ordinance substantially affects the use of the property that is the subject of the litigation." Id. We emphasized that "[b]oth parts of the test must be satisfied before a challenged ordinance may be held to be tantamount to zoning." Id.

Applying the first part of the analysis in SNPCO, this Court found that the ordinance did not refer to or depend on the city's zoning plan, nor did it refer to "land, zones,

buildings, lot lines, or any other terms and concepts customarily associated with comprehensive zoning plans." Id. at 478. We thus held that the ordinance was not tantamount to zoning, but rather fell "squarely within the general police powers traditionally exercised by government." Id. at 479. Because we found that the ordinance was not a zoning ordinance under the substantial effects test, the plaintiff could not take advantage of the procedural protections in Tennessee Code Annotated section 13-7-208. Id.

### B. Examining the Definition of Zoning

The first prong of the substantial effects test focuses on whether an ordinance is tantamount to zoning. That inquiry requires us to consider what constitutes zoning for purposes of the CZA. Although the CZA refers to zoning, it does not expressly define the term. When a statute does not define a term, we give the term its "natural and ordinary meaning." State v. Deberry, 651 S.W.3d 918, 925 (Tenn. 2022) (quoting Ellithorpe v. Weismark, 479 S.W.3d 818, 827 (Tenn. 2015)). To ascertain the meaning, we may look to "authoritative dictionaries published around the time of a statute's enactment," the term's usage in other statutes, or other sources. Id. (citing State v. Edmondson, 231 S.W.3d 925, 928 & n.3 (Tenn. 2007)).

Black's Law Dictionary, around the time the CZA was enacted, defined "zoning" as the "legislative regulation into districts and the prescription and application in each district of regulations having to do with structural and architectural designs of buildings and of regulations prescribing use to which buildings within designated districts may be put." Zoning, Black's Law Dictionary (3d ed. 1933). Similarly, a "zoning ordinance" is defined as an ordinance that "regulates the use to which land within various parts of the city may be put." Id. Zoning Ordinance. This Court has described zoning as "defin[ing] and restrict[ing] the permissive use of property." Brooks v. City of Memphis, 241 S.W.2d 432, 434 (Tenn. 1951). The Court in Brooks went on to explain that the power to zone necessarily implies the authority to draw lines and "provide that on one side of the line the property may be . . . used for certain purposes" while on the other side it may not. Id. Zoning ordinances "tend to be comprehensive geographically" by dividing entire cities or counties into districts, "though this need not always be the case." Powell v. City of Houston, 628 S.W.3d 838, 849 (Tex. 2021).

A key characteristic of zoning is regulating the use of land and buildings by district. See, e.g., 83 Am. Jur. 2d Zoning & Planning § 2, at 36 (1992) ("The very essence of zoning is the territorial division of land into use districts according to the character of the land and buildings, the suitability of land and buildings for particular uses, and uniformity of use."); 8 McQuillin, The Law of Municipal Corporations § 25.10 (3d ed. 2025) ("'Zoning' has been defined as the legislative division of a community into areas in which only certain designated uses of land or structures are permitted. The term . . . infers governmental regulation of the uses of land and buildings according to districts or defined areas."

(footnote omitted)); 1 P. Rohan, Zoning and Land Use Controls § 1.02[6][c] (1993) ("Zoning ordinances are adopted to divide the land into different districts, and to permit only certain uses within each zoning district."); City of Baton Rouge/Par. of E. Baton Rouge v. Myers, 145 So. 3d 320, 327 (La. 2014) ("Zoning is a general plan designed to foster improvement by confining certain classes of buildings and uses of property to certain localities."); Furlong Cos. v. City of Kansas City, 189 S.W.3d 157, 163 (Mo. 2006) ("Zoning is the exercise of legislative authority as to what land uses are in the interest of the public for particular areas within the political subdivision."); Square Lake Hills Condo. Ass'n v. Bloomfield Twp., 471 N.W.2d 321, 326 (Mich. 1991) ("A zoning ordinance is defined as an ordinance which regulates the use of land and buildings according to districts, areas, or locations."); Bd. of Cnty. Comm'rs of San Miguel Cnty. v. City of Las Vegas, 622 P.2d 695, 697 (N.M. 1980) (defining zoning as "governmental regulation of the uses of land and buildings according to districts or zones" (quoting Miller v. City of Albuquerque, 554 P.2d 665, 667 (N.M. 1976))).

Though the CZA does not define zoning, it does refer to "regulation by districts or zones." Tenn. Code Ann. § 13-7-102. This language is consistent with the definitions of zoning from dictionaries, cases, and treatises. Therefore, we conclude that the meaning of zoning as used in the CZA is the division of the county into geographic districts and the uniform regulation of the uses of land and buildings within each district. See Tenn. Code Ann. § 13-7-101(a)(1).

## C. Applying the Substantial Effects Test

With that background, we turn now to apply the first step of the substantial effects test to the case before us. As the State pointed out in its amicus brief, "the hallmark of zoning is zones." Grundy County's Resolution effectively divides the County into zones and regulates the use of land in those zones by specifying areas of the county where quarrying is permitted and those where it is not. Although these zones depend upon the proximity of the land from certain types of establishments, the zones in which quarrying is prohibited are readily identifiable, just as if Grundy County had explicitly identified those places as zoning districts in which quarries were excluded. The particular manner in which those zones are drawn is irrelevant because the effect is the same.

Like the ordinance at issue in Cherokee Country Club, Grundy County's Resolution attempts to regulate land use by district without complying with the procedural requirements for zoning ordinances. In Cherokee Country Club, this involved prohibiting demolition permits from being issued to properties in proposed historical districts without proper notice, planning, and public hearings. Here, it means prohibiting the location of quarries near designated establishments without following the CZA's procedures. This is in contrast to the ordinance in SNPCO, which regulated a dangerous activity within the city, regardless of where it occurred. SNPCO, 363 S.W.3d at 478–79.

The trial court found it important that Grundy County did not have a comprehensive zoning plan in place, unlike the cities in SNPCO and Cherokee Country Club. Although such a plan would be a probative starting point for courts in determining whether a regulation is tantamount to zoning, having such a plan is not necessary for a regulation to be characterized as zoning. When considering whether the ordinance in SNPCO was tantamount to zoning, the Court first analyzed the similarity of the ordinance to the city's comprehensive zoning plan but then moved beyond the plan to analyze whether the ordinance referred to other "terms and concepts customarily associated with comprehensive zoning plans." Id. at 478. Thus, in determining whether an ordinance can be classified as a zoning ordinance, courts should assess not just its relationship to a comprehensive zoning plan, but whether the challenged ordinance resembles the type of regulation typically recognized as zoning. See, e.g., Sandy Mush Props., Inc. v. Rutherford Cnty. ex rel. Bd. of Comm'rs, 595 S.E.2d 233, 236 (N.C. Ct. App. 2004) (concluding that an ordinance placing a 120-day moratorium on heavy industry near school zones was a zoning regulation because although the ordinance was not passed pursuant to a formally adopted zoning plan, it effectively divided the county into "zones in which heavy industry was allowed and those in which it was not").

In this case, the Resolution references property lines and boundaries in specifying the required distance of a quarry from certain types of establishments, providing that "[m]easurements shall be taken from the nearest recorded property line of the quarry business to the nearest property line or boundary of the foregoing [designated establishments]." The Resolution also includes a "grandfather clause" provision, which is a concept customarily associated with zoning regulations. See Tenn. Code Ann. § 13-7-208(b)(1) (2019) (permitting exceptions to new zoning restrictions for establishments already in operation). These are "terms and concepts customarily associated with" zoning. See SNPCO, 363 S.W.3d at 478. Although the terms in the Resolution are not exclusive to zoning ordinances, they are further evidence that the Resolution resembles the type of regulation typically recognized as zoning and can be "fairly characterized as tantamount to zoning." See id. Accordingly, the first prong of the substantial effects test is met.

The second step of the substantial effects test is likewise met. The Resolution substantially affects the use of the property at issue here because it wholly prohibits quarries in specified portions of Grundy County. [5] See, e.g., Cherokee Country Club, 152 S.W.3d at 473–74 (concluding that an ordinance which completely prohibited the issuance of demolition permits for at least 180 days for certain types of properties constituted a substantial interference with Cherokee's use of its property).

In summary, applying the substantial effects test, we conclude that the Resolution is tantamount to a zoning regulation. Accordingly, Grundy County was required to follow

_____

[5] Indeed, the parties do not appear to dispute whether the second prong is satisfied.

- 10 -

the statutory zoning requirements when enacting the Resolution, which it admittedly did not follow.[6] For these reasons, the Resolution cannot be enforced against Tinsley Properties with respect to the quarry on Clouse Hill Road.

## IV. CONCLUSION

The trial court erred when it granted summary judgment in favor of Grundy County, and the Court of Appeals erred when it affirmed the trial court's judgment. Accordingly, we reverse the judgment of the Court of Appeals, vacate the judgment of the trial court, and remand the case to the trial court for entry of summary judgment in favor of Tinsley.

The costs of this appeal are taxed to Grundy County, for which execution may issue if necessary.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE

---

[6] Because the Resolution was, in effect, a zoning ordinance, the fact that it may have been independently authorized by police powers is immaterial. If an ordinance is a zoning ordinance, it must follow zoning procedures. Cherokee Country Club, 152 S.W.3d at 471–72 (quoting Ellison, 183 So.2d at 195).

- 11 -