88 So.2d 224

**CITY OF NEW ORLEANS**

v.

*Dr. Joseph A. LA NASA et al.*

No. 42328.

May 7, 1956.

Rehearing Denied June 11, 1956.

---

Fishman, Reuter, Rosenson & D'Aquin, New Orleans, for defendants-appellants.

Henry B. Curtis, City Atty., John F. Connolly, Asst. City Atty., Luther E. Hall, Jr., Asst. City Atty., New Orleans, for plaintiff-appellee.

McCALEB, Justice.

The City of New Orleans is seeking to enjoin Dr. and Mrs. Joseph A. LaNasa and their family corporation, Emblem, Inc., from maintaining and operating a commercial warehouse on certain lots owned by Dr. and Mrs. LaNasa fronting on Gentilly Blvd. in the 2200 block thereof [1] and also to order them to remove an advertising sign from said property, on the grounds that the maintenance and operation of the warehouse and the sign are in violation of the zoning and underpass [2] ordinances of the city.

The defendants, while admitting that they are violating the zoning ordinance of the City of New Orleans (No. 18,565, C.C.S. adopted on July 3, 1953), assert that the law is unconstitutional insofar as it classifies their property as residential and further contend that it is unreasonable legislation as part of the property is zoned as residential and the remainder as industrial.

Following a hearing below, judgment was rendered for the city, and defendants were permanently enjoined from using the warehouse and ordered to remove the sign. They have appealed suspensively to this Court. A motion to dismiss the appeal for lack of jurisdiction was denied, see 227 La. 953, 81 So.2d 7, and the case has been argued and submitted for our determination on the merits.

The record reveals the following uncontested facts. The La Nasas, through Emblem, Inc., have conducted a furniture business for a number of years at the corner of Gentilly Blvd. and Republic Street, the store being located immediately across Republic Street from the property involved in this suit. In the fall of 1949, the City of New Orleans, requiring a portion of the property occupied by the furniture company for use in connection with the Florida-Gentilly Underpass, purchased the necessary land from Dr. and Mrs. La Nasa for $34,000

---

1. In square 2113 of the Third District of New Orleans, bounded by Gentilly Blvd., Benefit, Republic, Havana and Humanity Streets.

2. Ordinance No. 18,662, C.C.S., the so-called "Underpass Law", was repealed on March 11, 1956 and, therefore, is no longer pertinent to the case.

and, in addition, facilitated an arrangement whereby the La Nasas were permitted to construct a temporary warehouse on the property involved in this litigation, which was then owned by a Mr. Herman Doescher. The zoning classification of the property at that time (and as far back as 1929) was A-Residential on the front portion and E-Commercial on the rear 20 feet. To carry out the arrangement, the La Nasas and Mr. Doescher applied to the City Zoning Board of Appeal and Adjustment for permission to erect and use a temporary warehouse on Doescher's premises. This permission was granted, to expire not later than six months after the completion of the Florida-Gentilly Underpass, and the warehouse was built on the rear portion of the Doescher premises, 31 feet of it being located on the part which was zoned as A-Residential and 15 feet on the part zoned as E-Commercial, under the ordinance then in effect.

During this period, the city was contemplating the enactment of a new comprehensive zoning law and had employed experts in this field to make surveys and recommendations. One of these was the firm of Harland Bartholomew and Associates, who rendered a report to the city in 1949, recommending, inter alia, that the property involved herein be classified as commercial.

In August of 1952, Dr. and Mrs. La Nasa purchased the property in question from Mr. Doescher, largely on the basis of the recommendation made in the Bartholomew Zoning Report to the city.

In June of 1953, the Florida-Gentilly Underpass was completed and the temporary permit granted the La Nasas to operate the warehouse expired six months later, or in December of 1953. Meanwhile, in July of 1953, the Commission Council of New Orleans, after extensive study, adopted the new Comprehensive Zoning Ordinance No. 18,565, C.C.S., which classified the property involved as B-Residential except the rear 20 feet, which is classified as J-Industrial (according to district boundaries as shown on Lot-Line Zoning District Map 20); that is to say, virtually the same classification it previously had. In July of 1954, the La Nasas appeared before the Commission Council requesting a change in the zoning of the property from residential to commercial but their application was denied. Since then, they have steadfastly refused to comply with the ordinance. Wherefore this suit.

■ Imprimis, we dismiss as untenable defendants' various and sundry claims of the unconstitutionality of the zoning law, as applied to them, save one. It is well settled that zoning legislation is within the police power of municipal corporations and does not violate any constitutional guarantee unless it is found to be palpably unreasonable and arbitrary. State ex rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440, 33 A.L.R. 260; State ex rel.

Dema Realty Co. v. McDonald, 168 La. 172, 121 So. 613, certiorari denied 280 U.S. 556, 50 S.Ct. 16, 74 L.Ed. 612 and Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303. Hence, we need only to consider defendants' contention that the zoning of the property was clearly arbitrary and unreasonable, having no substantial relation to the health, safety, morals or general welfare of the community.

■■ On this question, it is plain that defendants have not sustained the burden of showing that the zoning of their property as B-Residential was made without due consideration of the character of the district. Indeed, it is apparent from the record that their charges of unreasonableness are, for the most part, predicated on the theory that the city should have adopted all the recommendations of the Bartholomew report which, of course, it was not obliged to do. There is no evidence showing that the rejection of the recommendation was arbitrary and capricious. On the contrary, the uncontroverted proof exhibits that the ordinance was adopted only after prodigious study and comprehensive planning and that the need for commercial and residential property within each zoning area was carefully considered. In the particular geographic area in question, the Planning Commission determined that only 49% of the area classified as either commercial or industrial was being used as such, leaving 51% of the allocated area still available. In the light of this information, the Commission Council was amply justified in retaining the same or similar classification of the subject property which had theretofore been designated under the ordinance in effect at the time of defendants' acquisition.

Defendants rely heavily on our decision in State ex rel. Loraine, Inc., v. Adjustment Board of City of Baton Rouge, 220 La. 708, 57 So.2d 409, where a zoning ordinance classifying as residential a previously unzoned area located between two residential districts was held invalid because the classification bore no substantial relationship to the health, safety, convenience or public welfare of the inhabitants in the part of the city affected. But that case bears no factual resemblance to the one at bar. There, the area zoned residential was unzoned before its acquisition and the landowner was led to believe that the property would be classified commercial, both by letter from the planning engineer of the City Planning Commission and by a zoning map prepared by the Commission. Here, defendants purchased the property knowing that it was zoned for residential uses and they were given no assurance by anyone connected with the city that the classification would be changed. Indeed, they were well aware at the time they applied for and were given a temporary permit to construct the warehouse on the property that, unless the recommendation of Bartholomew was adopted, they could not permanently maintain and use the land for business purposes.

Nor is there any merit in defendants' other complaint that the ordinance is unreasonable because the rear 20 feet of their property is classified as J-Industrial. In the first place, we think it plain that, although the zoning map places the division line between B-Residential and J-Industrial in this area 20 feet from the rear of plaintiff's property line, the *legal* division line is defendants' rear property line as shown in their title. Section 2 of Article IV of Ordinance 18,565, C.C.S., declares that:

"Where the district boundaries as shown on the Lot-Line Zoning District Maps approximately coincide with lot lines, the lot lines shall be construed to be the district boundary line unless otherwise indicated."

This provision was obviously inserted to preclude the possibility of any one lot having more than one classification and, though in certain contexts a separation of 20 feet might not be tantamount to approximate coincidence, for the purposes of this ordinance and, in view of the scale used in the zoning map, the boundary line can be said to coincide with the rear of defendants' lots involved in this litigation and, therefore, they are wholly classified as B-Residential.

But, even if this were not so, defendants would have no cause for complaint that the rear 20 feet of their property has been zoned J-Industrial instead of B-Residential. The ordinance indicates the clear intention of the Commission Council to zone the front lots located in the 2200 block of Gentilly Blvd. as B-Residential. Hence, defendants can hardly be heard to say that the zoning is unreasonable because the rear 20 feet of their lots is zoned for a less restrictive (and more profitable) use.

As for the advertising sign displayed by defendants on the front of their property, which they concede to have an area of at least 24 square feet, it suffices to quote from Article VIII, Section 2 of Ordinance 18,565, C.C.S. (to be read in connection with Article IX, Section 2, Paragraph 1 of said Ordinance):

"A building or land shall be used only for the following purposes:

\*    \*    \*    \*    \*    \*

"10. \* \* \* and signs not exceeding twelve (12) square feet in area, pertaining to the rental, lease, or sale of a building, or land; provided, however, that not more than one sign of the above character shall be permitted on any lot."

The judgment is affirmed.

FOURNET, C. J., absent.