DR. DONALD FRANCEY, *ET AL.*, PLAINTIFFS-RESPOND-ENTS, v. DE MASSI MOTOR CAR CO., INC., A CORPO-RATION OF NEW JERSEY, DEFENDANT-APPELLANT, AND ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF LYNDHURST, *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued April 10, 1961—Decided April 27, 1961.

Before Judges Price, Gaulkin and Sullivan.

*Mr. Frederic G. Stickel, III,* argued the cause for appellant (*Mr. James A. Breslin,* attorney).

*Mr. William W. Wimmer* argued the cause for respondents.

The opinion of the court was delivered by

Sullivan, J. A. D. This appeal involves the construction of the zoning ordinance and map of the Township of Lyndhurst, N. J., and, specifically, whether or not appellant's property is located in a business or a residential zone of said township.

De Massi Motor Car Co., Inc. (appellant) is engaged in the new and used automobile business at the corner of Riverside and Park Avenues, Lyndhurst. A short distance from its place of business is a vacant plot of land owned by appellant and used by it for the storage of new automobiles. This plot, which is the subject of the present appeal, is situated on the southerly side of Valley Brook Avenue, 107 feet east of Riverside Avenue. The plot is 75 feet in width and 175 feet deep, and is known as part of lot 1 in block 49 on the official assessment map. Lot 1, as shown on said map, is located on the southeast corner of Valley Brook and Riverside Avenues and has a frontage on Riverside

Avenue of approximately 175 feet and extends along Valley Brook Avenue about 182 feet. The lot was acquired by Gulf Refining Co. in 1929, and an automobile service station is located thereon. In 1954 Gulf sold the rear portion of said lot, 75 feet in width along Valley Brook Avenue, to appellant. Since then appellant has been using the property for storage of new cars. The property is enclosed by a wire fence.

The Lyndhurst zoning ordinance was adopted in 1938. The zoning map which is a part of the ordinance shows considerable strip zoning, particularly for business use. No lot lines are delineated on the map, nor are the dimensions of any zones shown by figures expressing distances in feet. However, there is a "scale in feet" on the map.

As shown on the map, the easterly side of Riverside Avenue in block 49 is strip-zoned, the northerly end of the strip being zoned for business and the balance of the strip as a "B" residence zone. The rest of the block is "A" residence. Reference to the scale on the map indicates that the strip is 100 feet in depth, and the business zone at the northerly end of the strip is 150 feet in width.

Zone depth is the crux of the case, because if the depth of the business zone as shown on the map is controlled by its measurement to scale, appellant's tract, which commences 107 feet back from Riverside Avenue, is not in the business zone but is in an "A" residential zone.

In January 1960 appellant applied to the building inspector for a permit to erect a building on the property to be used as a new and used car "Get Ready Shop" in connection with its automobile business. On denial of the permit, appellant appealed to the board of adjustment (board) for a variance and also asked the board to determine the true location of the business zone boundary line in the area in question, it being appellant's contention that its property was actually located in the business zone. In support of such argument appellant relied on the following provision in article III of the zoning ordinance:

"Zone boundaries are to be construed, except where obviously shown otherwise, as either following or being measured with reference to street lines, existing lot lines, streams or the line of a railroad right-of-way. Where a boundary line does not follow such a line its position is indicated by means of figures expressing distances in feet from a parallel street line or a parallel railroad right-of-way. Any uncertainty as to the true location of a district boundary shall be determined by the board of adjustment."

The board determined that the premises in question were in a business zone and approved the application for the building. The board did not specify the basis for its ruling other than to state that its determination was being made pursuant to article III, *supra*. The effect of this ruling was to give the business zone on the easterly side of Riverside Avenue in block 49 a depth of 182 feet although the zoning map shows a zone depth of 100 feet.

An action in lieu of prerogative writ to review the board's determination was then commenced by plaintiffs-respondents, who were resident taxpayers owning property within 200 feet of the premises in question. After hearing, the trial court ruled that the zone boundaries were to be determined by the dimensions shown on the zoning map (the issue of appellant's right to a variance was "abandoned" at pretrial). Judgment was thereupon entered adjudicating that the premises in question were not located in a business zone and enjoining appellant from using the property for commercial purposes. The present appeal followed.

Appellant contends that the determination by the board of adjustment that the property was in a business zone was supported by substantial evidence and should have been affirmed. However, the issue here (construction of the zoning ordinance and map), was legal, not factual and, if the board construed the ordinance improperly, its action must be set aside. 6 *McQuillan, Municipal Corporations* (*3d ed.* 1950), *sec.* 20.40; 8 *McQuillan, Municipal Corporations, sec.* 25.71; *Jantausch v. Verona*, 24 *N. J.* 326 (1957). *Cf. Fanwood v. Rocco*, 59 *N. J. Super.* 306, 315–317 (*App. Div.* 1960), affirmed 33 *N. J.* 404 (1960).

In essence, the construction of the zoning ordinance and map adopted by the board of adjustment, supported by appellant as correct, was that as to the particular zone strip involved, zone depth was to extend to the rear lines of existing lots because the boundary line of the zone was not indicated on the map by means of figures expressing distances in feet from a parallel street. See Article III, *supra*. That construction would place appellant's land in the business zone since it is the rear part of lot 1.

Such construction is not correct. Nowhere on the map are zone boundaries indicated by means of figures expressing distances in feet from a parallel street. However, they can be determined easily by use of the "scale in feet," and that seems to have been the legislative intent. There is nothing else on the map to measure except zone boundaries. The scale has no other purpose.

The provision of article III, *supra,* is that "except where obviously shown otherwise," zone boundaries are to be construed as either following or being measured with reference to "street lines, existing lot lines, * * *." The language is not entirely free from ambiguity. However, it seems clear that when the zoning map shows a business zone strip 100 feet in depth and the existing lot lines in the area extend to a depth of 182 feet, the existing lot lines are not to be followed in determining the zone boundaries because the zone plan obviously provides otherwise. *Visco v. Plainfield,* 136 *N. J. L.* 659, 662 (*Sup. Ct.* 1948). The reference in article III to following existing lot lines may have been intended to apply to a situation where there was a slight variation between the zone boundaries as shown on the map and existing lot lines. *Cf. Auditorium, Inc. v. Board of Adjustment,* 47 *Del.* 373, 381–382, 91 *A. 2d* 528, 532 (*Sup. Ct.* 1952); *Ciaffone v. Community Shopping Corp.,* 195 *Va.* 41, 46, 47, 77 *S. E. 2d* 817, 820, 39 *A. L. R. 2d* 757 (*Sup. Ct. App.* 1953); *City of New Orleans v. La Nasa,* 230 *La.* 289, 297, 88 *So. 2d* 224, 227 (*Sup. Ct.* 1956). That is not the case here.

The conclusion therefore is that the interpretation given the ordinance by the trial court is correct and its judgment is to be affirmed.