I «SOL GOTHARD, Judge.
The issue presented for our review in this matter is whether the Parish of Jefferson was arbitrary and unreasonable in its denial of a petition to change the zoning classification of a certain piece of property in Jefferson Parish.
The owner of the property in question, Lucille Monte, filed a zoning change application with the Clerk of the Jefferson Parish Council seeking reclassification of the property at 2332 Metairie Road in Metair-ie from a designation of R-1A (single residential) to GO-2 (general office). In the application, Ms. Monte stated that the property is currently being used as a single family residence, and she wishes to sell it for commercial use to receive a higher price. Ms. Monte asserted that five other buildings in the same block are already used for commercial purposes. It is clear from the record that the plaintiff, Lucille Monte, has been placed in a nursing home and is no longer living in the house. Her adult children have attempted to sell the house as residential and have been unable to do so because of its location fronting Metairie Road in an area of mostly commercial use | ^buildings. This home, built in the 1950’s, is one of only three left on the block used as a single family dwelling, due to the changes made to Metairie Road over the last 50 years.
The application for re-zoning was considered by the Jefferson Parish Department of Planning, which subsequently rec *508 ommended a denial of the application to the Jefferson Parish Council. Reasons given for the recommendation were:
The purpose of the petition is for the sale of the property at its highest market value. Reclassifying the petitioned property from R-1A to GO-2 would not result in a nonconforming use, as a single-family dwelling is a permitted use in the GO-2 district. The reclassification, however, would result in a spot zone. Spot zones confer rights and privileges on a single property owner, which are not enjoyed by owners of other similarly situated properties. In addition, the proposed zoning change would increase the potential for deterioration of the residential neighborhood, in that uses (other than single-family dwellings) permitted in the GO-2 district can create nuisances such as increased traffic, noise, light, trash, etc. Such permitted uses include banks, professional offices, beauty/barber shops, medical clinics, and florist shops.
The Jefferson Parish Council followed the recommendation of the Planning Board after considering its reasons and the petition of 42 nearby property owners, most of who live on Arlington Drive directly behind the property in question, and denied the application for re-zoning.
Ms. Monte filed a “Petition for Relief from a Denial to Re-Zone Property from R-1A to GO-2 Classification” in the Twenty-Fourth Judicial District Court. After a trial on the merits, the trial court found in favor of plaintiff and rendered a judgment ordering the Parish of Jefferson to “immediately change the zoning classification” of the property at issue “from its present zoning designation of R-1A to a zoning designation of GO-2.” Defendant, Parish of Jefferson filed a motion for new trial asserting the trial court exceeded its scope of authority. After a hearing on the motion, the trial court rendered an amended judgment in which it decreed that “the denial by the Parish of Jefferson to change the zoning | ¿classification” of the property in question “was arbitrary and unreasonable and bore no rational relation to the health, safety and welfare of the public.” The Parish of Jefferson appeals this amended judgment.
At the hearing, the plaintiff offered evidence from Butler Ball, a real estate broker, who testified that he has tried to sell the property in question from September 24, 2003 to March 24, 2004 at the listed price of $349,500.00. During that time he made every effort to sell the property to no avail. He received between fifty and seventy-five inquires about the property in response to various marketing efforts, but received no offers. The majority of the inquires concerned the zoning of the property. Mr. Ball testified that those who called were primarily interested in using the property for commercial use and lost interest when they discovered the property was still zoned residential. Mr. Ball’s expert opinion was that the R-l zoning made the property unmarketable.
Toni Tanner, a real estate broker for Re-Max, testified that she had the property listed several months before the listing with Mr. Ball and was unable to sell it. The original listing price was $500,000.00, but was later reduced to $400,000.00. Ms. Tanner stated that she had several buyers interested in the property until they discovered the zoning was residential. Ms. Tanner explained that the prospective buyers assumed it was zoned commercial because of its location, in the midst of many commercial properties fronting Metairie Road. Ms. Tanner explained that, although the zoning map shows residential property surrounding the property in question, the map is misleading because the area in- *509 eludes a library and a twenty to thirty unit apartment complex.
Keith Donaldson, a real estate broker and owner of a real estate education company, was accepted by the court as an expert in zoning issues. Mr. Donaldson testified that he was hired by the plaintiff to review the zoning issue regarding the subject property. He testified that he visited the site three times and drove around |,;the blocks surrounding the property in both directions. He observed the traffic flow on Metairie Road and on Arlington, where most residents are opposed to the zoning change. His opinion is that rezoning the subject property would have no effect on Arlington. He explained that Arlington is a residential street behind the property. However, the property at issue is at the edge of the sub-division and faces Metairie Road, which is largely a commercial area at that point. Mr. Donaldson stated that most sub-divisions in Jefferson Parish are set up that way, with a commercial street at the beginning of the area and a residential street directly behind it.
Mr. Donaldson described the block of Metairie Road in question as having “spot zoning,” which he explained as a system whereby one property is zoned differently than those around it. There are some legitimate uses for spot zoning and it is done all over Jefferson Parish. Mr. Donaldson stated that the classification of this property as residential is spot zoning because the properties around it are all GO-2. He explained that there is a holdout of three homes built in the fifties in this block that are still zoned R-l.. Mr. Donaldson testified that this area of Metairie is unique because this one block has several different zones. It has residential, commercial and GO-2. There’s a library, a church, a hospital, professional offices, a large apartment building, and single family dwellings left over from the 1950’s. Mr. Donaldson further testified that the GO-2 zone does not allow the selling of wares, so it does not cause any additional delivery truck traffic.
Mr. Donaldson opined that the reason for the method of zoning used in this block of Metairie Road was an effort by parish officials originally to keep commercial use on the north side of the road and GO-2 and R-l on the south.
Maps introduced with this testimony show that the entire block across Metairie Road from the property is commercial. On plaintiffs side of the street the block is bordered by a public library and a church. The block also contains a Rdental office and a law office. Plaintiffs property is between a single family residence and a two-story rental complex.
Mr. Donaldson explained that it is not enough to know how a property is zoned, one must also examine how it is used. For example, the parish has the library on the corner zoned as residential. Mr. Donaldson also stated that, in his opinion, it is unfair to consider the large apartment building next door to a single family dwelling as residential. It is not in harmony with the houses behind it.
Mr. Donaldson stated that his view was that the property should be GO-2 to be consistent with the use of the other buildings on the block. In his words, “in commerce to not allow it to be GO-2 is, just makes no sense. I mean, I can’t imagine someone looking at it differently.” In further testimony, Mr. Donaldson stated that he has spent time observing traffic on Metairie Road and on Arlington. He testified that in real estate terms Arlington is “an entire world” away from Metairie Road. While four or five cars an hour pass on Arlington, the rate on Metairie Road is about five hundred cars. Metairie Road is a major through fare about 18,000 cars a day. It is Mr. Donaldson’s opinion that *510 the change of this one property to GO-2 would have no effect on traffic, lighting or garbage collection on either street. In conclusion, Mr. Donaldson testified that GO-2 is “exactly the right zoning” for this property.
The court also heard testimony from Edwin Durabb, the director of the planning department for Jefferson Parish, which is the body that processes re-zoning petitions. Mr. Durabb stated that someone in his department would make a presentation to the planning advisory board, which in turn would make a presentation to the parish council. The planning advisory board takes testimony from the applicant, and concerned citizens before making its recommendation. Thus, after appearing before the planning advisory board, an applicant for re-zoning classification would go before the parish council.
|7In consideration of the instant case, Mr. Durabb stated that the overall neighborhood plan for the block is to zone it primarily R-1A, which would permit the Library to stay. Mr. Durabb admitted that the apartment complex next door to the property in question is a non-conforming use, and that there are some GO-2 uses on the block. Mr. Durabb stated that “.. at this time the GO-2 was not an appropriate use because it was re-zoning a single piece of property and it was not done in a comprehensive manner and we felt that the predominant usage along this portion of Metairie Road on the south side were still viable residential areas.”
Mr. Durabb testified that the Council also considered some opposition to the rezoning because of an oak tree on an adjoining property. The root system of the tree extends into the back yard of the property in question and paving the back yard could result in damage to the tree. Mr. Durabb admitted that the oak tree is registered and may be protected under other regulations. However, he was not certain. Objections from neighboring residents also included a concern that re-zoning the property may result in a decrease in value, creating a comparable that could decrease surrounding values.
At the end of the hearing the trial court ruled in favor of plaintiff and gave extensive reasons for the judgment. Notably the trial court stated that the parish has “clearly” approved spot zoning in the past in the block. The court stated:
I find it interesting that while the Parish or rather the Council would insist through its planning department that we need to stem the tide, as it were, or stop continuation of spotting, now it’s spotting, not one spot, but spotting, that we must keep this side of the street on Metairie Road residential.
.the reality being the usage of this property is that Metairie Road for more than one block, more particularly and pertinently the property located and facing Metairie Road for the most part in this area is used for functions, businesses, operations and purposes other than that of residential, certainly single family residential.
The court continued to verbalize its findings, including a finding that the parish was arbitrary in its actions. The trial court noted that to allow the R-1A to stand |s“is tantamount to a constructive confiscation of one’s money, of one’s value of one’s property.” The trial court described the Planning Board’s reasons for recommending denial of the application as “one of the most inartfully stated purposes.” The trial court ultimately held that the poorly stated purpose for the denial has “no rational bearing on the Council’s ultimate decision.” The court then rendered judgment in favor of plaintiff, reversing the Council's decision.
*511 The presumption of validity aL tached to zoning ordinances is a well established principle of law in Louisiana. It applies to all zoning ordinances, including piecemeal and spot zonings. Palermo Land Co., Inc. v. Planning Commission of Calcasieu Parish, 561 So.2d 482 (La.1990). In Palermo, the Supreme Court explained:
A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and therefore a taking of property without due process of law. Whether an ordinance bears the requisite relationship to the health, safety and welfare of the public is a factual question which must be determined from the evidence in the record. If it appears appropriate and well founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld.
Id. 561 So.2d at 492
(citations omitted)
In the case before us, the trial court found that the denial of the Parish to grant the re-zoning request was spot zoning in reverse, which effectively takes plaintiffs property out of commerce. We agree.
“Spot zoning” is the singling out ■ of a small parcel of land for a use classification which is different from that of the surrounding area, usually for the benefit of the owner of that parcel, or for the benefit of the owner of some other property in that area, and to the detriment of other owners. To constitute spot zoning there must be a change in the. zoning classification applicable only to a relatively small area, and that change must be out of harmony with the comprehensive zoning plan for the community as a whole. Hardy v. Mayor and Bd. of Aldermen, City of Eunice, 348 So.2d 143, 148 (La.App. 3 Cir.1977); writ denied, 350 So.2d 1212 (La.1977)
(citations omitted) .
laOur Supreme Court, while acknowledging that zoning power derives from the police power of the zoning authority and is therefore, a legislative authority, has noted that:
However, rezoning on a piecemeal or spot basis is highly suspect. Generally, property owners may rely upon the previous exercise of police power in zoning, expecting that changes in zoning will only be made so as to affect vested property interests when the change is required to assure the public welfare. A city purporting to act under its police powers cannot create in a large area of property zoned in one classification an island of one parcel of land relegated to another zoning classification when no rational reason exists for such a separate classification.
(citations omitted)
Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659, 672 (La.1975.)
Given the testimony and documentary evidence presented at trial, we find the trial court’s assessment of the situation is correct. It is clear that the Parish has zoned most of the block of Metairie Road on which plaintiffs property sits as commercial. It refuses to allow plaintiff herein, the same opportunity to sell her land for commercial uses as her immediate neighbors. That area of Metairie Road has changed considerably in the fifty years since this property was constructed, and testimony and documentary evidence shows that this property will not sell as a family home. Accordingly, we find the trial court’s judgment is correct and we affirm.

AFFIRMED.