JUDE G. GRAVOIS, Judge.
^Plaintiffs, Thelma, and Richard Berry, appeal a judgment in favor of defendant, the Parish of Jefferson, finding that the Parish’s action in calling for a zoning and land use study of a 23-acre area in Terry-town, Louisiana, that included the Berrys’ immovable property, which ultimately resulted in rezoning of the'Berrys’ property, was not arbitrary and capricious, and thus did'not constitute ¿'regulatory taking of the Berrys’ property. For the following reasons, we affirm the trial court’s judgment.

FACTS AND PROCEDURAL HISTORY

This matter, and the Berrys’ related suit against Volunteers of America, Inc. (“the VOA”), have been the subject to two prior appeals to this Court. Pertinent facts were summarized-, by this. Court in the second appeal in Berry v. Volunteers of Am., Inc., 10-832 (La.App. 5 Cir. 4/26/11), 64 So.3d 347, 348-349 (“Berry II”), to-wit:
The Berrys own two contiguous parcels of property, containing, a total of 4.4 acres,, known as Lot-2 of Block 15 and Lot 2 of Block 16 |3of Elmwood Subdivision, Section “D”, on Behrman Highway on the west bank <of Jefferson Parish (“the Berry property”).[1] Volunteers of America, Inc. (“the VOA”) approached the Berrys about purchasing their property for. development of a high density, multi-unit housing facility for the elderly. On October 13, 2006,, the Berrys and the VOA entered into, a purchase agreement for'the property.-^"At the time the purchase agreement was entered into, and for many years prior thereto, the Berry property was zoned as Multiple Use Corridor District (“MUCD”), which allowed for mixed commercial use of the property. This zoning designation was consistent with the VOA’s anticipated *1256 use of the property-. Pursuant-to the purchase agreement, the Berrys permitted the VOA to. have access to their property .to initiate a number of actions with respect to its proposed development on the property. The, VOA contacted the Parish Planning Department to ascertain the suitability of the land for its anticipated project. It also proceeded to prepare a site plan for the project as required by the Parish Planning Department. In October of 2006, the Parish Planning Department issued two letters to' the Louisiana Housing Finance Agency, which was involved with the financing of this- project for the VOA, confirming that the Berry property was properly zoned (MUCD) for the VOA’s proposed development.
As the VOA proceeded with these initial actions for its proposed project, on February 7, 2007 the Parish Council adopted a resolution requesting the Parish’s legislative delegation “to- introduce, support and endeavor to have enacted the appropriate legislation relative to requiring the Louisiana Housing Finance Authority to obtain approval of the local governing authority prior to the disbursement of tax credits in either the incorporated municipalities in Jefferson Parish or in the unincorporated areas of Jefferson Parish.” Further, on March 28, 2007, the Parish Council adopted a resolution calling for the implementation of a zoning and land use area study (“the study”) of “those properties generally bounded by Behrman Highway, Peter Street, Industry Canal and Oakwood Canal; with the intent of reclassifying the properties in these areas from their existing zoning and Future Land Use Map categories to R-1B Suburban Residential District and the most appropriate Future Land Use Map categories.” This resolution specifically ratified a similar resolution adopted by the Parish Council on January 10,2007.
The study area encompassed 23.67 acres and included the Berry property. Pursuant to the Parish Code, a moratorium was imposed for up to one year on the issuance of building permits in the area covered by the study, effectively halting the VOA project.[2] The study eventually concluded with the Parish Council adopting an ordinance on December 12, 2007 changing the zoning applicable to the Berry property from MUCD to C — 1 (Neighborhood Commercial District) for the front portion of the Berry property along Behrman Highway, and |4to R~lA (Single-Family Residential) for the remaining rear portion of the Berry property. These zoning changes were in part consistent with the Parish’s 2003 Comprehensive Land Use Plan [“the Land Use Plan”] for the area encompassing the Berry property. These zoning changes were, however, inconsistent with the VOA’s planned use of the property, "effectively killing the project.[3]
The Berrys filed two separate suits concerning this matter. In their first suit (No. 641-845), filed on February 21, 2007, the Berrys sought to enforce their purchase agreement with the VOA (and its alleged assignee, Forest Towers II, Limited Partnership), and to enjoin the Parish from using the moratorium im *1257 posed in conjunction with the study to prevent the issuance of a building permit for the Berry property. After the trial court sustained an exception of prematurity filed by the Parish, this Court in an earlier appeal reversed the ruling of the trial'court on the exception, thereby allowing the Berrys to proceed with their suit. (See Berry v. Volunteers of America, Inc., et al, No. 08-184 (La.App. 5 Cir. 9/16/08), 996 So.2d 299).[4] After the Parish re-zoned their property, as set forth above, on January 7, 2008 the Berrys filed a second suit against the Parish (No. 654-717), challenging the moratorium and re-zoning of their property as being violative of their constitutional rights under their right to contract, as amounting to a talcing of their property without just compensation, and as being violative of the Louisiana Constitution’s prohibition against age discrimination. The Berrys also claimed damages resulting from the Parish’s said actions. After these suits were consolidated, the Parish filed a Motion for Summary Judgment, which the trial court granted.
(Footnotes added.)
In Berry II, this Court reversed the grant of summary judgment in favor of the Parish, finding that the matter was inappropriate for summary judgment because it required judicial determination of subjective facts, such as the Parish’s motive, intent, good faith, and/or knowledge. Berry II, 64 So.3d at 350. Therein, this Court found 'that the Berrys’ opposition to the Parish’s motion for summary judgment alleged facts to sufficiently meet their burden under La. C.C.P. art. 967 and properly placed at issue whether the Parish’s action in calling for the zoning Land land use study in 2007, and the resultant rezoning of the Berrys’- property, was a proper exercise of the Parish’s zoning authority or was in bad faith.[5]
Trial on' the merit's of the matter was held on January 26 and 27, 2015. The trial court rendered judgment on March 2, 2015, dismissing the Berrys’ suit against the Parish. In its reasons for judgment, the trial court stated:
.Land use is subject to the police pow.er of governmental bodies, and the courts will not .interfere with the decisions of these bodies unless it is clear that their action is without any substantial relation to the public health, safety, or general welfare. City of New Orleans v. La Nasa, 230 La. 289, 88 So.2d 224, 226 (1956). It is “well settled that zoning legislation is within the police power of municipal corporations and does not violate any constitutional guarantee unless it is found to be palpably unreasonable and arbitrary.” City of New Orleans, id. The actions of a parish with respect to land use matters will not be disturbed on judicial review unless the court finds that the result of the proceedings or action taken was plainly and palpably unreasonable, arbitrary, an abuse of discretion,and as, such bears no relation to the health, safety or general welfare of the public. Id.
*1258 The burden of proving the rezoning ordinance invalid is extraordinary. Palermo Land Co. v. Planning Comm’n of Calcasieu Parish, 561 So.2d 482, 490 (La.1990). If it appears appropriate and well founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld. Palermo, id. at 492. Doubtful cases will be resolved in favor of the validity of the challenged zoning enactment. Hernandez v. City of Lafayette, 399 So.2d 1179, 1182 (La.Ct.App. 3rd Cir.1981), writ denied, 401 So.2d 1192 (La.1981) (citing Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1975); and Kirk v. Town of Westlake, 373 So.2d 601 at 602 (La.App. 3rd Cir.1979), writ denied, 376 So.2d 1268 (La.1979)).
The statutory restriction placed upon governing officials when enacting zoning ordinances is that the, ordinance be for the purpose of promoting health, safety, morals, of the general welfare of the community. LSA-R.S. 33:107, 4721. Palermo, id. at 494.
The Berrys moved for a devolutive appeal, which was granted. On appeal, in their first assignment of error, the Berrys argue that the trial court erred in failing to find that the Parish’s action in calling for the zoning and land use study, hand the resultant rezoning of their property, was arbitrary and capricious. In their second assignment of error, the Berrys argue that the trial court erred in failing to award monetary damages in their favor.
The testimony adduced at trial reveals the following:

Richard Berry

Mr. Berry testified that he was a real estate broker, and that he and his wife purchased the properties in 1998 and 2000 with the intent to build an office building for his company’s use on the front parcel and perhaps a walking trail on the rear parcel. However, he later decided to keep the property for investment purposes. He testified that no one from the Planning Commission or the Parish ever sent him a letter or other notification regarding the zoning study of his property. However, on cross-examination, he admitted that he filed his first lawsuit in the matter within a week of the time the zoning study was called, thus indicating that he had actual notice of the proceedings. He testified that he did not appear before the Planning Commission, nor did his expert witness or his attorney, because he was not personally notified by letter of the proceedings, and additionally he felt that the process was already “rigged” against him.[6]

Chris Roberts

Jefferson Parish Councilman Chris Roberts testified that he was the councilman for the district that included Terrytown and the study area in 2006, when he first learned of the proposed VOA project. Mr. Roberts testified that he learned of the project through the media. He said the VOA had a housing development in Algiers similar to the one planned for Terrytown 'and that this development had serious issues with crime, including the rape of an elderly president. He said that he had asked the VOA how they had responded to the problems in the Algiers development, *1259 but the VOA never gave him an answer, or explained to him how they would manage the proposed property or gain control of the security at the Algiers property. ■
Mr. Roberts testified that at the time in question, the west bank of Jefferspn Parish had a disproportionate share of high density subsidized housing and that his district in particular had a disproportionate share of that. As councilman, he considered it his duty and responsibility to learn about the facts of the proposed VOA project and to consider his constituents’ concerns about the project as well. He testified that after Hurricane Katrina, he studied the subsidized housing in his and other areas of the Parish.-and was concerned about crime, diminished-quality of life therein, and low academic scores of children residing in high density subsidized housing. He said thatrhigh density housing developments experience a disproportionate share of criminal activity compared to low density housing. He also knew that some civic organizations in his area were against the project and additional high density subsidized housing.
Mr. Roberts testified that he called for a zoning and land use study of the Berry property and the surrounding area in order to properly study the Parish’s zoning and the Land Use Plan. The proposed high density development was inconsistent with the Land Use Plan for the property, which was designated as low to medium density residential. The current zoning, multi-use corridor district (“MUCD”), allowed for building of a high density residential 'development; He stated that his actions were. consistent with the Parish’s land use policy of the preservation of existing residential neighborhoods.[7] Mr. Roberts was clear that his |sconcerns were about residential density, not the income of the residents.[8] He was concerned -that the surrounding area would not .have the general and particular resources to support an influx of elderly residents. He remembered that in the period immediately after Hurricane Katrina,, the metro area and particularly .the west bank had seen the departure of many doctors and medical resources that were. not ¡yet replaced by 2006-07, the time in which the study was launched and done. , He was concerned that a high density development would place additional significant demands upon local resources that were already lacking.
Mr. Roberts testified that he also sponsored an action of the Council to limit the ability of the Louisiana Housing Finance Agency to give tax credits to projects such as this without local approval. His motivation for this action was one of timely notice to the Jefferson Parish Council of such proposed projects, as he first learned of the VOA project through the newspaper.

Steven Villavaso

The Berrys’ expert witness in planning and zoning, Steven Villavaso, testified that *1260 he had over 40 years’ experience in urban planning. -He testified that the rezoning from MUCD to C-l (front tract) and Rl-A (rear tract) was arbitrary and capricious because the • best zoning tool ■ for areas transitioning from residential to commercial, such as the Berry tracts, was MUCD because it allowed for varied uses. He testified -that the actual land uses of tracts within -the study area that were rezoned Rl-A were in fact not used that way pointing to the Entergy electrical substation located south of the Berry property. He also n'oted thát an elementary school was located' north of the Berry'tracts across Peter Street, which- use- was not lasingle-family residential. He felt- that this portion of the Behrman Highway corridor had been trending to becomé commercial, not residential, for the last 20 years. Mr. Villavaso observed that the study area was a “transitional” area be-tweén ' residential and commercial uses. He testified that determining the proper zoning classification in transitional areas is often debatable.
Mr. Villavaso also felt that the study area was too small and tended to View the Berry property in isolation. He felt the study area should have included more of the Behrman Highway corridor .to the north, as well as the Belle Chasse Highway corridor south of the property, which is heavy .commercial, in order to properly capture the “zone of influence” surrounding the Berry tracts. He noted other commercial uses on properties within the study area fronting on Behrman Highway, including a day care center, a bar, and a dialysis center, . as well as a children’s group home.
On cross-examination, Mr.- • Villavaso agreed that electric substations and schools were.permitted uses within Rl-A zoning. He acknowledged- that MUCD zoning permitted other such land uses as all night fast food locations, car washes, and bars. He also agreed that if the study area had been “expanded,” it would have included more Rl-A zoning located nearby, including an abandoned golf course on the other side of Behrman Highway that was likely zoned Rl-A, and a subdivision located west across the canal from the Berry tract.
■ Mr. Villavaso agreed .that the rezoning of the Berrys’ front, tract to C-l would still permit the building on that tract of a high density residential development like the one proposed by the VOA. ¡He also agreed that the Land Use Plan of low/medium density and the- prior zoning of MUCD were inconsistent and that calling for a study in an attempt to reconcile the two was good planning practice. .
I inJuliette Cassagne
, The zoning study, was introduced into evidence through the testimony of Juliette Cassagne, assistant director of the Jefferson Parish Planning Department, who performed the zoning and land use study for Parish Plánning Department in 2007 while she was a staff planner. She testified that she received the assignment in January of 2007, and the matter went to the Planning Advisory Board in November of that year. Ms. Cassagne testified that she was not told by anyone in the department specifically about the proposed VOA housing development, though she had read about it in the papers. When conducting the study, Ms. Cassagne said that she had to consider all potential uses of the property, and thus did not conduct the study with any objective with respect to the proposed VOA project. The study did not consider the Berry properties in isolation, but rather considered them in the context of the en *1261 tire study area. The study did evaluate all potential uses permitted under both the current zoning and the proposed zoning, and further had the ability to evaluate and consider other potential zonings as revealed by the study, ,
To conduct the study, Ms. Cassagne researched the history of the property in the study area, including previous subdivisions and zoning efforts, in the geographic information system, a database maintained by the department. After conducting this research, she made several site visits to the area and surrounding property. She evaluated future land use, and then conducted a technical analysis to determine whether various proposed zoning changes would result in non-conforming land use, and what those possible consequences might be. Ms. Cassagne said that after a study is called, signs are posted on the property to alert the public that a zoning study is in progress and to invite the public’s questions and input. She also said she received numerous phone calls from people who had seen |nthe sign and wanted to know about the study. As the planner in charge, she was responsible for responding to these calls.
Ms. Cassagne explained that the study included having her work vetted by supervisors, after which the director of the planning department would make the final recommendation.. After the final' report is, compiled, the matter is advertised for public hearing with the Planning Advisory Board. At the public hearing, citizens of the Parish may appear and speak for or against the recommended changes. As the planner who conducted the study, Ms. Cas-sagne was responsible for presenting the report to the Board. After a proposal is passed by the Board, the matter is presented to the Parish Council by the planning department’s director, which happened in this case.
Ms. Cassagne testified that in conducting a study, planners are not limited to considering Only the requested chánge, which in this case was from MUCD to Rl-B. She was able to evaluate the existing zoning as well as potential zonings. The study’s results rejected the proposed zoning of Rl-B across the study area because the study revealed that such zoning would result in 57 percent nonconforming use, and instead adopted zoning that resulted in only 7 percent nonconforming use with the new zoning. The study recommended that properties in the study area with direct frontage on Behrman Highway be rezoned to C-l, which is' neighborhood commercial with the commercial parkway zone overlay on top of that. ' Properties that ’fronted on Peter Street and the un-built Alto Street were recommended to be zoned Rl-A, and a small triangular piece of property closest to the intersection of Behrman Highway and Belle Chasse Highway, where a bar was located, was kept MUCD. Thus, the Berry tract fronting oh Behrman Highway (the front tract) |12received C-l neighborhood commercial zoning, and the tract fronting on Alto Street (the rear tract) received Rl-A zoning.[9]
Ms. Cassagne testified that with the new zoning, there was no longer a conflict be *1262 tween the zonings' and the land uses for the area. She testified that this was part of the reason the land use category of low to medium residential for the tracts fronting Behrman Highway was amended-to low medium city commercial use. She noted that C-l zoning does allow for a mix of uses, including .residential. She testified that all of the existing uses fronting on Behrman Highway were permitted .in the new zoning of C-l. She testified that MUCD zoning would allow potential land uses which might be adverse to nearby residential neighborhoods, including adult entertainment facilities, all night fast food outlets, and a 65-foot high building.

Michael Lauer

The Parish called Michael Lauer as an expert witness in land use and planning. Like Mr. Villavaso, the Berrys’ expert witness in planning, Mr. Lauer agreed that there was conflict between the Parish’s zoning classification of the Berry properties and the Land Use Plan designation. He also opined that in those circumstances, “best planning practices” called for a zoning and land use study- to be conducted. He felt that the Parish’s action in calling for the study, as well as the resultant rezoning, met the stated goals in the comprehensive zoning plan of promoting the public health, safety and welfare by preserving the character of ■ surrounding residential neighborhoods.

\wLAW AND ANALYSIS

A property owner holds property subject to the police power of the Parish, and does not have a vested property interest in the existing zoning of property. Glickman v. Parish of Jefferson, 224 So.2d 141 (La.App. 4th Cir.1969). The Fifth Amendment prohibition against taking private property for public use without just compensation does not guarantee the most profitable use of property, Goldblatt v. Town of Hempstead, 369 U.S. 590, 592, 82 S.Ct. 987, 989, 8 L.Ed.2d 130 (1962), and a diminution in value, standing alone, does not establish a taking and neither is being deprived of a parcel’s most profitable use (“highest and best use”), without more, a taking. Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631 (1978).
In .order to prove that the Parish acted in an arbitrary and capricious manner, the Berrys must demonstrate that the result of the actions taken by the Parish have .no substantial relationship to the public health, safety, and welfare. Palermo, 561 So.2d at 493.
In their first assignment of error, the Berrys argue that the Parish’s zoning and land use study that included the Ber-rys’ property, which resulted in a moratorium on the issuance of building permits in the study area, and which ultimately resulted in rezoning of the Berrys’ property, was done in bad faith by the Parish because it was done specifically to thwart and prevent the VOA’s proposed high density, low income housing development for the elderly on the Berrys’ property; and thus, the zoning change on the Berrys’ property was arbitrary and capricious and constituted a regulatory taking of their property.
Upon review of the evidence presented in this case, we find that the Berrys failed to bear their burden of proof, and accordingly, the trial court did not err in finding that the Parish was not arbitrary and capricious, in'requesting the zoning |14and land use study, and that the result of the action taken by the Parish had a substantial relationship' to the public health, safe *1263 ty, and welfare. Mr. Roberts testified that he called for- the zoning study because; among other reasons, the proposed high density development was inconsistent with the Parish’s Land Use Plan for the property, which was designated as low to medium density residential. His actions were consistent with the Parish’s land usé policy of preservation of existing residential neighborhoods. Mr. Villavaso acknowledged that calling for a study in an attempt to reconcile inconsistencies between the then-current zoning of the property and the Parish’s Land Use Plan for the property was good planning practice. He also stated that the study area was a “transitional” area and that proper zoning, classification in transitional areas is often debatable. Ms. Cassagne testified that she considered all potential uses of the property and did not conduct the study with any objective with respect to the proposed. VOA project. She stated that the study did not consider the Berrys’ property in isolation, but rather considered it in the context of the entire study area. Finally, Mr. Lauer: agreed that there was a conflict between .the then-current zoning of the property and the Parish’s land use plan, and that “best planning practices” called for a zoning and land use study of the area in question. He concluded that the Parish’s action in calling for the study, as well as the resultant rezoning, met the stated goals in the comprehensive zoning plan of promoting the public health, safety and welfare by preserving the character of surrounding residential neighborhoods. Considering all of this testimony, we cannot say that the trial court erred in its findings herein in favor of the Parish.
The Berrys also argue that the zoning and land use study was of a “drive by”nature, stating that the study was not thorough. Ms. Cassagne’s testimony refutes that charge.' Her testimony showed that the study- was thorough and considered, | ^and included research into the zoning and land use history of the study area, as well as several site visits. Ms. Cas-sagne was also knowledgeable about the lañd hses and zoning in the areas immediately surrounding the study área and considered such in making her recommendations.
The Berrys also argue that imposition o'f the' moratorium on new building permits was arbitrary ánd capricious. As the testimony and evidence revealed, both the Berrys’ and the Parish’s expert witnesses testified that the old zoning of MUCD was incompatible and at odds with the Land Use Plan Resignation of low/medium density residential,, and vRien that situation occurs, good, planning practices support the calling for a zoning and land use study. Therefore, under these facts, the evidence shows that the calling for the zoning and land use study was not arbitrary and capricious. The moratorium on the issuance of building permits is an automatic legal consequence of the imposition of a zoning and land use study. Given the fact that calling' for the land use study was proper and not arbitrary and capricious, the resulting moratorium cannot be arbitrary and capricious either. It is settled that temporary moratoria imposed pending zoning decisions do not constitute takings requiring just compensation. Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 337, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002).
The Berrys also argue that the study area of just over 23 acres was unreasonably small. - They argue that the study *1264 should have included the Behrman Highway corridor north of the property, as well as the. Belle Chasse Highway corridor to the south that has heavy commercial, use. However, the Berrys’ expert, Mr. Villava-so, agreed that if the study area, were expanded, it would have also picked up more Rl-A zoned land that is in the immediate-area. There was also other .testimony that these two commercial corridors had some separation by virtue 11fiof a canal and thus were possibly not within each other’s zone of influence. There was also testimony that the Behrman Highway corridor is transitional between residential and commercial use, rendering it dissimilar from the uses on Belle Chasse Highway, which are commercial. Also, the fact that an alleged zoning and land use study of another area in Jefferson Parish, known as Fat City, included around 200 acres, as was argued by the' Berrys, is not relevant to what might be an appropriate size for a zoning and land use study in this area of Jefferson Parish that1 is separate, remote, and of a different character than Fat City. Thus, we find no merit to the Berry’s argument that the study area was unreasonably small. i ■ 1 /
The Berrys also argue that the new-zoning is arbitrary and capricious. ’ However, whenever the propriety of a zoning decision is debatable, it will be upheld. Palermo, 561 So.2d at 498. The Berrys’ own expert testified that determining the próper zoning in a transitional area, such as where the Berrys’ property is located, is “debatablé.” And, it has further beeri shown that the new zoning bears a substantial relationship *to the public health, safety, and welfare. Accordingly, the Ber-rys have not shown that the new zoning is arbitrary and capricious.
The Berrys also argue that their property was reverse spot-zoned, citing Monte v. Parish of Jefferson, 04-1059 (La.App. 5 Cir. 2/15/05), 898 So.2d 506. However, -that case is distinguishable. Spot-zoning is defined therein as: -
the singling out of a small parcel of land for a use classification which is different from that of the surrounding area, usually for the benefit of the owner of that parcel, or for the benefit of thé owner of some other property in that area, and to the detriment of other owners. To constitute spot'- zoning there must be a change in the zoning classification applicable only to a relatively small area, and that change must be out of harmony ' with the comprehensive zoning plan'for the community as a whole.
Id. at 511.
|17Here, however, the Berrys’ properties were not rezoned in isolation from surrounding properties, but they and other properties within the study area were rezoned- in harmony with each other. The Berrys argue that it was spot-zoning because theirs was almost the only undeveloped property to be rezoned and that the other properties were relatively unaffected by the rezoning because they were already developed as commercial enterprises. However, this is not the aforementioned definition of spot-zoning. The Berrys also cite Four States Realty Co. v. City of Baton Rouge, 309 So.2d 659 (La.1974), but this case is-inapposite. The Berrys’ properties are not an “island” of special zoning surrounded by zoning of another classification.
Upon review, we find that the evidence presented in this case is quite clear and convincing that the new zoning— which applies not only to the Berrys’ properties, but also to other properties in the study area — was rationally related to the *1265 public health, safety, and welfare of the area, and is also in harmony within the study area. The fact that other commercial enterprises on neighboring parcels within the study area fronting on' Behrmán Highway have already been developed shows that such development is also possible for the -Berrys’ front tract, though Mr. Berry testified that he has made no effort to market the property. The Berrys failed to bear their burden of proof that the rear parcel zoned Rl-A is without worth. The Berrys’ expert appraiser testified that the front parcel is worth $359,000 and the back parcel is “worthless,” though his appraisal and comparables were attacked on cross-examination.. The Berrys point to the VOA’s offer for both parcels for $1.2 million, but the Berrys also ignore the facts that that sale was not completed and that evidence showed the failure of the sale was due to a host of factors other than [ isthe zoning and land use study and moratorium.[10] Consequently, the Berrys have not borne their burden of proof that the property has been subject to a regulatory taking or that it cannot be marketed and sold for the uses permitted in the new zoning classifications. A regulatory taking occurs when the government regulation destroys a major portion of the property’s value or eliminates the practical economic uses of the property. However, an unconstitutional taking of private property does not result merely because the owner is unable to develop it to its maximum economic potential. Only if the regulation deprives a property owner of all practical use of his property without compensation, will an unconstitutional taking have occurred. Major v. Pointe Coupee Parish Police Jury, 07-0666 (La.App. 1 Cir. 12/21/07), 978 So.2d 952, 954. Likewise, the frustration of speculative economic gain or a lost prospective business opportunity is not a taking. Id.
For the foregoing reasons, we find that the Parish’s action in calling for the zoning and land use study, the resulting moratorium, and the ultimate rezoning, was not arbitrary and capricious, but was shown to be rationally 'related to the public safety, health, and welfare. Accordingly, the Ber-rys’ assignment of error that the trial court erred in failing to find that the Parish’s action in calling for the zoning study, and the resultant rezoning of their property, was arbitrary and capricious is without merit.
In their second assignment of error, the Berrys argue that the trial court erred in failing to award monetary damages in their favor. Because we have found that the Parish’s action in calling for the zoning and land use study, and the resultant rezoning of their property, was not arbitrary and capricious, we likewise find that | i3the trial court did not err is failing to award monetary damages in favor, of the Berrys. This assignment of error is likewise without error.

CONCLUSION

For the foregoing reasons', we affirm the trial court’s judgment in favor of Jefferson Parish and against the Berrys.

AFFIRMED

. Mr. Berry testified that they purchased the front parcel in 1998 for $400,000.00, and purchased the rear parcel for $100,000.00. The purchase agreement with the'VOA was for both parcels for a total price of $1.2 million.

. Testimony at trial suggested that neither the VOA nor the Berrys applied for a building permit for the Berry property at any point.

. The new zoning was implemented on the entire study area, not just the 4.4 acres of the Berty property.

. "Berry I”

. The Berrys state in brief that in Berry II, this Court “recognized” that Councilman Roberts "made a series of statements which support allegations of bad faith.” The Berrys mischaracterize this Court’s prior opinion. This Court made no finding of fact that Councilman Roberts actually made the alleged statements contained in footnote 45 of that opinion, or a determination that they supported a finding of bad faith on the part of the Parish.

. Mr. Beny testified that he was notified by letter when one of his neighbors requested a variance, but he was not notified by letter when a zoning study concerned his own property. Palermo recognized that most statutes regarding changes in zoning contain no requirement of personal or actual notice to the landowner, but recognized that published notice is sufficient. Palermo, 561 So.2d at 496.

. A prime initiative of future land use is the preservation of existing residential neighborhoods. Jefferson Parish Code of Ordinances, Section 25-273.

. In the Berrys’ opposition to the Parish’s motion for summary judgment that was the subject of the prior appeal, the Berrys alleged that Councilman Roberts made statements to the effect that he did not want low income New Orleanians to move to his district in the proposed housing development because residents thereof were lazy and criminal. At trial, Roberts denied making any such statements about residents of subsidized housing. Instead, he noted that he had made remarks, taken out of context, about unemployed people in the immediate post-Katrina job market being "lazy” because .sp many businesses were looking for workers.

. The tract to the north of .the Berry tract, situated on Peter Street and that contained dwellings and the stables, was rezoned from hospital district, to which none of the actual uses conformed, to Rl-A, except the portion fronting on Behrman Highway, upon- which was located a business, which received C-l zoning. The current land use and new zoning had a significantly higher percentage of conformity than with the old hospital district zoning. s' .

. According to testimony, factors other than the zoning study and moratorium contributed to the VOA’s failure to buy the property from the Berrys, including the Parish's refusal to revoke the dedication of Alto Street, which interfered with the VOA’s placement of build-tags on the site plan, the existence of an undisclosed pipeline servitude on one of the parcels, and the failure of the VOA to secure particular tax credits as noted in the purchase agreement.